In the Matter of the ESTATE OF
Wayne Colyer FIELDS.

Nos. S–12017, S–12318.

Supreme Court of Alaska.

Sept. 4, 2009.

As Modified on Denial of Rehearing
Dec. 16, 2009.

Robert A. Sparks, Law Office of Robert A. Sparks, Fairbanks, for Appellants Wayne Fields and Joseph Fields.

David York, Law Office of David York, Fairbanks, for Appellant Elizabeth Cook.

Cory R. Borgeson, Borgeson & Burns, PC, Fairbanks, for Appellee Charles Lee McKelvey Fields, Personal Representative of the Estate of Wayne Colyer Fields.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Wayne Colyer Fields, an Alaska resident, conveyed real property in Washington to his four adult children. After Fields's death his children engaged in probate litigation over the removal of one of them as personal representative and the intent of the Washington property conveyance. Following post-trial findings, conclusions, and recommendations by the standing master, the superior court denied removal of the personal representative and imposed a constructive trust over the property, ordering Fields's children to convey their interests in the property to a trust referenced in Fields's will. Three of Fields's children appeal on numerous grounds. We affirm the decision denying removal of the personal representative and, with one caveat, the decision imposing the constructive trust over the Washington property—we remand for further proceedings to confirm whether two of Fields's children received due process-compliant post-trial notice and opportunity to be heard before the superior court entered its final order on that issue.

## II. FACTS AND PROCEEDINGS

### A. Facts

In the 1930s Fields and his wife, Edna Mae, purchased six acres of scenic waterfront property in Washington, where they lived for a few years. Fields and his wife then kept the Washington property for family recreational purposes. Fields had four children: Elizabeth, Joseph, Wayne Jr., and Charles. Following their mother's death, the children became concerned that their father might convey the Washington property outside the family and they convinced him to convey the property to them. Fields transferred the Washington property to his four children in 1987. Whether Fields intended the transfer to be unconditional or in trust for his descendants is at the heart of this case.

Fields died in 1990 at the age of 82. He left a will executed on June 12, 1980, the validity of which has never been challenged. Specific bequests were made to each of the four children, the Fairbanks North Star Borough Library, and Elizabeth's husband. The residuary estate, including real and personal property, was left to "The Wayne Colyer Fields Trust," but apparently no trust document had ever been executed.

Charles was named as executor in the will. Charles filed for informal probate of the will and appointment as personal representative in January 1991. The matter was referred to Standing Master Susan Paterson the same day, and she signed orders for the informal probate of the will and Charles's appointment as personal representative of Fields's estate.

Standing Master Paterson retired and was replaced by Standing Master Alicemary L. Closuit, who gave notice to Charles in May 1996 that absent an objection the estate proceedings would be administratively closed due to inactivity. Superior Court Judge

Ralph R. Beistline administratively closed the file in October 1997 without discharging Charles as personal representative.

The siblings continued to discuss, and dispute, the status of the Washington property. In 1999 Charles concluded that he should create a trust document for the trust referenced in Fields's will. In 2002 Charles sent a letter to his siblings asking them to execute quitclaim deeds to transfer their interests in the Washington property to the estate so that a trust could be established, the property could be conveyed to it, and the estate could be closed. Elizabeth, Joseph, and Wayne Jr. questioned the need for a conveyance and refused to execute deeds.

### B. Procedural History

In December 2003 attorney Barry Donnellan entered an appearance on Elizabeth's behalf and filed a motion to re-open the estate proceedings. Donnellan also filed two other documents, each entitled "Joinder in Motion to Re–Open the Case," one signed by Joseph and the other by Wayne Jr. (each of which listed personal addresses and telephone numbers). The joinders were on Donnellan's pleading paper and stated: "I am a son of Wayne Colyer Fields, deceased. I join in the motion by my sister Elizabeth Jane Cook to re-open this case."

At the same time Donnellan filed a petition on Elizabeth's behalf to remove Charles as personal representative pursuant to AS 13.16.295(a),[1] alleging that Charles had neglected to distribute the estate's interest in real property in Fairbanks, refused to provide information about the estate, and denied Elizabeth access to her father's memorabilia at the Fairbanks residence. Donnellan certified service on Charles, Joseph, and Wayne Jr., including notice of a hearing on the removal petition set for February 20, 2004.

Charles stipulated to the motion to re-open the estate and it was granted in January 2004. The stipulation was signed by Donnellan and by Charles's attorney, Cory Borgeson, with certified service on Joseph and Wayne Jr. The order re-opening the estate, signed by Standing Master Closuit, was distributed only to Donnellan and Borgeson.[2] In light of Judge Beistline's resignation, the proceedings were re-assigned to Superior Court Judge Mark I. Wood; notice to that effect was distributed to Donnellan and Borgeson.

Charles opposed removal as personal representative and asked for leave to conduct discovery and for a trial date. Charles described his three siblings as "the three petitioners" and blamed the delays in estate administration on their unwillingness to cooperate in establishing a trust for the conveyance of Fields's residuary estate. Charles also alleged that when Fields deeded the Washington property to his children, they agreed to hold it in trust and act as co-trustees in managing it, and he asked the court to establish an implied trust if no express trust was found to exist. Charles served his filing on Joseph and Wayne Jr.

Standing Master Closuit held the previously noticed hearing on February 20, 2004. Despite having notice of the hearing, Joseph and Wayne Jr. did not attend. In response to a question about what the "siblings" wanted, Donnellan answered that all remaining assets should be distributed. Standing Master Closuit set a June 10 trial for the petition to remove Charles as personal representative, noting that "[t]hree heirs want immediate distribution" and stating that if Charles filed a cross-petition on the trust issue, everything would be tried at the same time.

Charles later filed a formal cross-petition to establish an express trust to receive the balance of the estate after satisfaction of Fields's specific bequests. The cross-petition

---

1. AS 13.16.295(a) provides in relevant part:
 A person interested in the estate may petition for removal of a personal representative for cause at any time. Upon filing of the petition, the court shall fix a time and place for hearing. Notice shall be given by the petitioner to the personal representative, and to other persons as the court may order.

2. Distribution and service of documents on the attorneys is not at issue; our discussion here will center on distribution and service of documents on the technically unrepresented parties, Joseph and Wayne Jr.

asked the court to "recognize the existence of the Fields Family Trust," order the "appropriate parties" to transfer the Washington and Fairbanks real property to the trust, and name Charles as trustee of the trust. Charles served Joseph and Wayne Jr. with the cross-petition papers.

Charles filed a witness list naming Elizabeth, Joseph, and Wayne Jr. Donnellan, on behalf of Elizabeth, moved to stay the cross-petition. Charles filed an amended witness list. Charles subpoenaed Elizabeth for a deposition and she moved to have it quashed. Charles opposed Elizabeth's motion to stay the cross-petition. Joseph and Wayne Jr. were served papers relevant to these actions.

In May 2004 Judge Wood denied Elizabeth's motion to stay the cross-petition and directed that the cross-petition be heard with the removal petition, and also issued an order granting leave for Charles to depose "the other parties in this matter." The orders, both of which had been recommended by Standing Master Closuit, were distributed to Donnellan and Borgeson.

At a June 4, 2004, status conference with Donnellan and Borgeson present, Standing Master Closuit reset trial for October 13 and 14. A written order confirming the new trial dates was issued the same day and distributed to Donnellan and Borgeson. Additional motions were filed regarding out-of-state depositions, all of which were served on Joseph and Wayne Jr. The resulting orders were distributed to Donnellan and Borgeson. It appears from the record that Charles's attorney deposed at least Joseph shortly before trial.

Trial took place as scheduled before Standing Master Closuit. Charles and Elizabeth were present with their attorneys, Borgeson and Donnellan. Joseph attended but chose to sit in the spectator benches. Elizabeth had the opportunity to put her case on first, but Donnellan stated Elizabeth was "just going to rely on the file" for her petition to remove Charles as personal representative. Borgeson then presented Charles's case both in opposition to the removal petition and in support of the cross-petition regarding the Washington property and the unformed residuary trust, calling two witnesses and in-troducing fourteen exhibits into evidence. No rebuttal witness testimony or documentary evidence was presented by Donnellan, and counsel moved directly to closing arguments. Aside from Donnellan's cross-examination of Charles's witnesses, the only evidence presented at trial regarding the Washington property and the unformed residuary trust was that presented by Charles. Elizabeth and Charles filed post-trial briefing and served Joseph and Wayne Jr.

In December 2004 Standing Master Closuit issued findings of fact and conclusions of law and her recommendations. She found that the "family" had not prevailed by a preponderance of the evidence on the issue of removing Charles as the personal representative and recommended that the petition to remove Charles be denied. She also found that when Fields conveyed the Washington property to his children, they agreed to hold the property in trust for the benefit of all of his and Edna Mae's descendants:

> It is clear from the credible evidence ... that the family was very aware of their agreement to place the property in trust for the descendants of the decedent. The family, despite this promise, never created a trust document. Their position now is that it is not held in trust but is owned by them outright.

She concluded that the siblings would be "unjustly enriched" if allowed to retain or sell the Washington property with no restrictions, and recommended that the superior court order the "family" to deed the Washington property into Fields's estate. She further found that Fields's will referenced a trust for distribution of the residue of his estate, that the trust had never been finalized, and that as personal representative, Charles had a duty "to create by document a trust and to transfer property into that trust."

The final page of the standing master's report gave notice that, pursuant to Alaska Civil Rule 53, objections to the findings and recommendations must be filed within ten days. This notice included detailed instructions on objection procedures. A copy of the standing master's report was distributed to

Donnellan and Borgeson, but not to Joseph or Wayne Jr.

No objections were raised to Standing Master Closuit's December 2004 findings and conclusions or her recommendations. In April 2005 Judge Wood denied the petition to remove Charles as the personal representative. In June 2005 Judge Wood entered an order finding jurisdiction and adopting Standing Master Closuit's recommendations regarding the Washington property. Judge Wood then imposed "a constructive trust to maintain the [Washington] property for the benefit of decedent's descendants," directed Charles to establish an express trust, and ordered Fields's children to convey their interests in the Washington property to that trust.

Judge Wood found that Elizabeth, Joseph, and Wayne Jr. "submitted to the Court's jurisdiction when [Elizabeth] filed the petition to remove the personal representative in this matter" and thus it "has personal jurisdiction over the parties." As to subject matter jurisdiction, the court stated:

> Where a court has personal jurisdiction over a party, it may indirectly affect title to property located in another state through its power over the individuals under the court's jurisdiction by requiring the party to execute a conveyance of land. Additionally this Court has subject matter jurisdiction over the estate pursuant to AS 13.06.065 and AS 13.16.025.... Thus, because the Court has personal jurisdiction over the parties and subject matter jurisdiction over the estate and because this is an equitable action, the Court has jurisdiction to follow the Standing Master's recommendations. (Internal quotations and citations omitted.)

In September 2005 attorney Robert Sparks entered an appearance in the proceedings for Joseph and Wayne Jr., and they moved to set aside the two decisions (collectively "the judgment") pursuant to Rule 60(b)(1), (3), and (4).[3] As to Rule 60(b)(4), they argued that the judgment was void for lack of subject matter jurisdiction, lack of personal jurisdiction over Wayne Jr., and various violations of due process. Charles opposed the motion, submitting a number of e-mails among Elizabeth, Joseph, and Wayne Jr. demonstrating their collective efforts to remove Charles as personal representative and to contest Charles's efforts to require them to convey their interests in the Washington property to the estate. Judge Wood denied the motion for relief from the judgment. Joseph and Wayne Jr. then moved for reconsideration. Judge Wood did not rule on this motion, and it was deemed denied under Civil Rule 77(k)(4).

Joseph and Wayne Jr. appeal the denial of their Rule 60(b) motion only as it relates to the Washington property. Elizabeth separately appeals the denial of the petition to remove Charles as the personal representative and the decision to adopt the standing master's recommendations about the Washington property. Joseph and Wayne Jr. are also participating in Elizabeth's appeal. We consolidated the appeals.

## III. STANDARD OF REVIEW

 We review the denial of a motion to remove a personal representative under AS 13.16.295 for abuse of discretion,[4] and will overturn the superior court's findings of fact if they are clearly erroneous.[5] We review the grant of an equitable remedy, such as a constructive trust, for abuse of discretion, but we review de novo any underlying questions of law and the application of law to facts.[6] We generally review a superior

---

**3.** Alaska Civil Rule 60(b)(1), (3), and (4) provide:
(b) On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect;
....
(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void....

**4.** *Helgason v. Merriman,* 36 P.3d 703, 705–06 (Alaska 2001).

**5.** *Id.* at 706 (citing *Bowman v. Blair,* 889 P.2d 1069, 1072 n. 5 (Alaska 1995)).

**6.** *See Riddell v. Edwards,* 76 P.3d 847, 852 (Alaska 2003).

court's decision to deny relief under Rule 60(b) for abuse of discretion, reversing only if we are left with a definite and firm conviction based on the whole record that the superior court made a mistake.[7] But we review de novo a decision to deny relief under Rule 60(b)(4) because the validity of a judgment is a question of law.[8] "We may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party."[9]

 We review questions regarding personal and subject matter jurisdiction de novo because "[j]urisdictional issues are questions of law subject to this court's independent judgment."[10] Questions of due process also are reviewed de novo.[11] We adopt "the rule of law that is most persuasive in light of precedent, reason, and policy" when considering jurisdictional and due process questions.[12]

## IV. DISCUSSION

### A. Joseph and Wayne Jr.'s Appeal

#### 1. Additional facts and background relevant to Joseph and Wayne Jr.'s Rule 60(b) motion

Joseph and Wayne Jr. submitted affidavits in support of their Rule 60(b) motion stating that: they never were represented by Donnellan; they did not understand why Charles's attorney sent them copies of papers filed in the probate proceedings but assumed it was just a courtesy; Donnellan did not send them copies of documents;[13] they did not understand that the court system considered them parties to the proceedings; and they were not "aware that Mr. Donnellan did not intend to present any witnesses or evidence at the hearing." They also disputed Charles's contention that their father had conveyed the Washington property in trust.

Charles opposed the motion, submitting a series of e-mails among Elizabeth, Joseph, and Wayne Jr., obtained during discovery, to demonstrate Joseph's and Wayne Jr.'s significant participation in the development and implementation of the strategy for the probate court proceedings:

a. On November 21, 2003, Elizabeth e-mailed regarding a meeting she intended to schedule with Donnellan and Joseph to discuss the case. Elizabeth stated: "Mr. Donnellan will be back in the country, next Wednesday, and I will set up an appointment with him, for you and me. I have several questions to be put to him, which I'll send to you in the next couple of days (as well as to Wayne). They parallel your thoughts for the most part."

b. On December 9, 2003, Elizabeth e-mailed about the meeting she and Joseph had had with Donnellan. Elizabeth noted that "we had an hour's meeting with Mr Donnellan, and determined to go ahead with a petition to the Probate Court to remove [Charles] as Dad's Personal Representative" and that a resolution of the Washington property dispute should wait.

c. On February 1, 2004, shortly before Charles filed his response to the removal petition, Elizabeth e-mailed in reply to an e-mail from Wayne Jr., noting Charles's desire to transfer the Washington property into the estate.

---

7. *Williams v. Crawford*, 982 P.2d 250, 254 (Alaska 1999).

8. *See Kopanuk v. AVCP Reg'l Hous. Auth.*, 902 P.2d 813, 816 (Alaska 1995) (citing *Kennecorp Mortgage & Equities, Inc. v. First Nat'l Bank of Fairbanks*, 685 P.2d 1232, 1236 (Alaska 1984)).

9. *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006) (citing *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1269 (Alaska 2001)).

10. *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10

(Alaska 2002) (alteration in original) (quoting *McCaffery v. Green*, 931 P.2d 407, 408 n. 3 (Alaska 1997)).

11. *Id.*

12. *Id.* (internal quotation omitted).

13. The record nonetheless reflects that the papers filed by Donnellan, like the papers filed by Charles's attorney, contained certificates of service for Joseph and Wayne Jr. *See supra* pp. 1000–01.

d. On February 13, 2004, Elizabeth e-mailed a request for documentation of instances in which Charles refused to allow "any one of us to 'help' with administration of the estate." The subject line of Elizabeth's e-mail reads "Court hearing preparations."

e. On February 14, 2004, Wayne Jr. responded to Elizabeth, noting that his encounters with Charles were limited to exchanges about the Washington property.

f. On March 31, 2004, Joseph e-mailed about evidence that could be used in court and asked: "Are we going to do something besides seek his removal as Personal Representative?"

g. In an apparent e-mail attachment dated April 8, 2004, two days after Charles filed his cross-petition regarding the Washington property, Joseph provided a lengthy and detailed response to the statements made by Charles in his cross-petition and related affidavit and to Charles's request that Elizabeth, Joseph, and Wayne Jr. be required to convey their interests in the Washington property to the estate.

h. On April 17, 2004, Wayne Jr. e-mailed: "[I]f we lose (which from a rational viewpoint seems unlikely) we will be no worse off than we are now, still stuck with [Charles]." He asked if a partition of the Washington property could be done at the same time and further questioned: "Does Donnellan say that we can't do both?"

i. Elizabeth's April 18, 2004, responsive e-mail repeatedly referred to the petition to remove Charles as personal representative as "our petition" and "our present petition." She notes that "Donnellan says we can withdraw now, or wait until after trial. It's up to us."

j. On April 19, 2004, Wayne Jr.'s wife Kathy e-mailed stating: "I did want to let you know that [Wayne] is having second thoughts about not dropping the action against [Charles]. He feels the important thing is to get rid of [Charles] and now thinks that it's very likely that won't ever occur, given Don-nellan's statement about the likelihood of an appeal." Kathy noted Elizabeth's suggestion that their emphasis should be on the Washington property, and asked Elizabeth: "After you talk to Donnellan perhaps we could arrange a conference call between you, Wayne and Joe. We think this requires real conversation." On April 20, 2004, Kathy e-mailed Elizabeth again and asked, "There was a reason why you [Elizabeth] were given/allowed to take the ball and told to run, right?"

k. On April 20, 2004, Joseph e-mailed, discussing Elizabeth's motion to stay Charles's cross-petition to establish a trust and transfer property to it.

l. Also on April 20, 2004, Wayne Jr. e-mailed, stating: "It seems we have a concurrence that at least for now we go on playing this hand. If we win and [Charles] appeals (raises) then maybe we fold? If Donnellan can't be around for the trial, then what?"

m. Elizabeth sent an e-mail on April 20, 2004, summarizing discussions she had with a Washington attorney about the Washington property and related issues.

n. On April 21, 2004, Elizabeth e-mailed a status report. She noted the pending motion to stay Charles's cross-petition and stated that because Charles "failed to respond" to the removal petition and the list of witnesses named for trial related to trust issues, "we are not going to offer any [witnesses] of our own."

o. On June 4, 2004, Donnellan e-mailed Elizabeth: "The court set the trial off from next week to October 13–14. Please advice [*sic*] Joe and Wayne accordingly." Elizabeth replied, copying Joseph and Wayne Jr.

In their reply Joseph and Wayne Jr. clarified that they were not unaware of the pendency or nature of the dispute about the Washington property, but rather were unaware they could be bound by the trial result. They noted, and reiterated at oral argument on the motion, that Donnellan (on behalf of Elizabeth) had "basically defaulted"

on the Washington property issues by failing to present evidence or object to the master's findings. They thus argued that they were not attempting to re-litigate the dispute, because it really had not been litigated at all.

Judge Wood denied Joseph and Wayne Jr.'s Rule 60(b) motion, stating that they had adequate notice of the proceedings, that no misrepresentations by Charles's attorney prevented them from presenting a case, and that their failure to participate in the proceedings was not the result of excusable neglect or violations of due process.

### 2. Rule 60(b)(4)

Joseph and Wayne Jr. raise a number of arguments why the judgment was void and should have been set aside under Rule 60(b)(4). They argue that the probate court: (1) lacked subject matter jurisdiction to consider and impose a constructive trust over the Fields children's interests in the Washington property, both inherently and because of the lack of a proper reference of the matter to the standing master; (2) lacked personal jurisdiction over Wayne Jr.; and (3) violated both Joseph's and Wayne Jr.'s due process rights by binding them to orders without their knowledge that they were subject to the court's jurisdiction or were considered parties to the proceedings.

### a. The superior court had subject matter jurisdiction to consider and impose a constructive trust over the Fields children's interests in the Washington property.

The primary thrust of Joseph and Wayne Jr.'s argument is that the probate court is a court of extremely limited jurisdiction and

has no authority to: (1) determine title disputes between a personal representative and "strangers to the estate"; (2) entertain equitable actions or issue equitable relief; or (3) consider or impose a constructive trust over property. They contend that these matters are "within the exclusive jurisdiction of the Superior Court, [not] the Probate Court," and imply that Standing Master Closuit is "the Probate Court" and that Judge Wood is "the Superior Court." They concede that "the Superior Court would have subject matter jurisdiction of a claim to impose a constructive ... trust" but state that "Charles did not file his Cross–Petition with the Superior Court."

■ The fundamental flaw in Joseph and Wayne Jr.'s argument is the misconception that the probate court is something different from the superior court. Alaska's probate statutes are based on the Uniform Probate Code, which is designed to allow states to create separate and inferior probate courts or to place probate jurisdiction within a court of general jurisdiction.[14] Alaska chose the latter course, placing subject matter jurisdiction for probate matters with the superior court.[15] The probate rule authorizing masters to make reports and recommendations for final action by a superior court judge does not create an inferior probate court over which the master presides.[16]

It is true that probate matters are governed generally by probate statutes and rules, but a probate statute specifically provides that the court, meaning the superior court,[17] "has jurisdiction over all subject matter relating to" decedents' estates and trusts "[t]o the full extent permitted by the constitution."[18] We have previously noted that

---

**14.** *See* 1 UNIFORM PROBATE CODE PRACTICE MANUAL 2–3, 29–32 (Am. Law Inst., 2d ed.1977).

**15.** AS 22.10.020(a) (superior court has original jurisdiction over probate matters); AS 13.06.050(7) ("court" in probate statutes means "superior court"); *Briggs v. Estate of Briggs*, 500 P.2d 550, 554 (Alaska 1972). Had the legislature intended the superior court's probate jurisdiction to be more limited, it would have specified any exclusions in unambiguous terms as it did with respect to district courts. *See* AS 22.15.050(1)-(2) ("The jurisdiction of the district courts does not extend to (1) an action in which the title to

real property is in question; (2) an action of an equitable nature, except as otherwise provided by law.").

**16.** *Cf.* Alaska R. Prob. P. 2(a)-(f).

**17.** AS 13.06.050(7).

**18.** AS 13.06.065(1)-(2). AS 13.06.060(1), (5) provide a territorial limitation on the superior court's subject matter jurisdiction, so that it applies to decedents "domiciled in this state" and to trusts "subject to administration in this state."

when exercising probate jurisdiction a superior court "should continue to exercise its jurisdiction" to resolve "questions ancillary" to the probate proceedings.[19] Nothing in the probate statutes or rules suggests that a superior court exercising probate jurisdiction is an inferior court without authority to decide questions of a decedent's interest in property or to issue equitable relief.

*Briggs v. Estate of Briggs*[20] is instructive. There, the decedent's wife brought a superior court suit (separate from probate proceedings) for legal and equitable relief against: the decedent's estate; a corporation owned in equal parts by the decedent and another shareholder; and the other shareholder in that corporation.[21] She sought: (1) delivery of twenty-five percent of the corporation's stock pursuant to an oral agreement with the decedent for services rendered to the corporation; (2) a declaration that a buy-sell agreement between the shareholders and the corporation was void; (3) reformation of the buy-sell agreement; or (4) payment of half the money paid by the corporation to the decedent's estate for his stock under the buy-sell agreement.[22] She also sought damages from the corporation and the surviving shareholder for conspiracy to deprive her of her interest in the corporation.[23] The trial court granted a motion to dismiss all of the claims.[24] On appeal this court affirmed the dismissal of the non-conspiracy claims, stating that: (1) those claims came within the superior court's probate jurisdiction; (2) the resolution of those claims was intertwined with the probate of the decedent's estate; (3) the relief sought was available in the probate proceedings; and (4) the wife was required to pursue those claims in the probate proceedings (where she already had filed an objection to the sale of the decedent's stock to the corporation under the buy-sell agreement and a claim to half of the proceeds of the stock sale).[25]

■ Like the dispute in *Briggs*, the dispute over Fields's Washington property is directly related to and intertwined with the administration of Fields's estate. The personal representative contended that the 1987 *inter vivos* transfer of the Washington property by Fields had been based on an oral trust agreement, that Elizabeth, Joseph, and Wayne Jr. were in breach of the oral trust agreement and unjustly enriched by that breach, and that a constructive trust should be imposed over the Washington property so it could be administered as property of the estate and distributed as a part of the residuary bequest to the trust named in Fields's will. This is a sufficient nexus to the decedent's estate for the dispute to fall within the superior court's probate jurisdiction.

Joseph and Wayne Jr. nonetheless argue that other probate statutes specifically exclude constructive trusts from the superior court's probate jurisdiction. They first point to AS 13.06.065(3) and its grant of subject matter jurisdiction over trusts, and then to the definition of "trust" in AS 13.06.050(53),[26] which includes express trusts and trusts created or determined by judgment or decree under which the trust is to be administered like an express trust, but explicitly excludes "constructive trusts." Joseph and Wayne Jr.

19. *Briggs*, 500 P.2d at 554.

20. *Id.* at 550

21. *Id.* at 551.

22. *Id.* at 551, 553–54.

23. *Id.* at 551.

24. *Id.*

25. *Id.* at 553–54.

26. AS 13.06.050(53) provides:
"[T]rust" includes an express trust, private or charitable, with additions to the trust, wherever and however created; "trust" also includes a trust created or determined by judgment or decree under which the trust is to be administered in the manner of an express trust; "trust" excludes other constructive trusts, resulting trusts, conservatorships, personal representatives, trust accounts that are POD designation accounts under AS 13.33.201— 13.33.227, custodial arrangements under AS 13.26 or AS 13.46, business trusts providing for certificates to be issued to beneficiaries, common trust funds, voting trusts, security arrangements, liquidation trusts, trusts for the primary purpose of paying debts, dividends, interest, salaries, wages, profits, pensions, or employee benefits of any kind, and any arrangement under which a person is nominee or escrowee for another[.]

conclude that the only reasonable interpretation of these statutory provisions is that the probate court has no subject matter jurisdiction to impose a constructive trust. We disagree.

■ The reasonable and sensible interpretation of these statutory provisions is that a constructive trust (other than a constructive trust that might ultimately be formalized by judgment to be administered like an express trust) is not governed by and administered under the probate statutes concerning trusts, Title 13, Chapter 36, "Trust Administration." But this does not mean that the probate court is precluded from imposing a constructive trust as an equitable remedy in a probate proceeding when appropriate. In *Riddell v. Edwards*,[27] a case arising from probate proceedings, we held that:

> a 'constructive trust may be defined as a [device] used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs'; the trust arises to prevent the property holder from retaining property obtained 'by reason of unjust, unconscionable, or unlawful means.'[28]

The purpose and application of a constructive trust has nothing to do with the governance or administration of express trusts, and there is no impediment to a probate court imposing a constructive trust over property in connection with the administration of a decedent's estate. Indeed, in *Riddell* we vacated an order imposing a constructive trust over property not because the probate court lacked authority to order that form of equita-

ble relief, but because the necessary elements justifying relief were not apparent.[29]

■ Joseph and Wayne Jr.'s final argument for voiding the judgment for lack of subject matter jurisdiction is that there was an improper reference of the proceedings to Standing Master Closuit. They argue that Alaska Probate Rule 2(a)-(b),[30] which allows the appointment of a standing probate master for certain matters, does not list "[e]quitable actions seeking to impose a constructive trust on real property not owned by the estate" as a matter that can be heard by the master. They also point out that the rule requires orders of reference to be served on all parties and that there is no evidence that an order of reference was served for Charles's cross-petition. Lastly they assert that Standing Master Closuit was never formally assigned to preside over Charles's cross-petition and she "had no power or subject matter jurisdiction to hear the proceedings and make Findings of Fact and Conclusions of Law."

The standing probate master conducts hearings and recommends findings and conclusions to the superior court.[31] It is the superior court that makes final decisions,[32] and before doing so the court may permit oral argument or additional briefing, may allow the taking of additional evidence, and may grant a trial de novo.[33] Here Joseph and Wayne Jr. waived any right to challenge Standing Master Closuit's participation in the proceedings by failing to appear at the properly noticed February 20, 2004, hearing and raise a timely objection. Standing Master Closuit's participation in the proceedings did not adversely impact the superior court's

---

**27.** 76 P.3d 847 (Alaska 2003).

**28.** *Id.* at 852 (quoting *McKnight v. Rice, Hoppner, Brown & Brunner*, 678 P.2d 1330, 1335 (Alaska 1984)) (alteration in original).

**29.** *Id.* at 849, 852–54.

**30.** The rule provides as follows:

Rule 2. Appointment and Authority of Masters

(a) Appointment. The presiding judge may appoint a standing master to conduct any or all of the probate proceedings listed in subparagraph (b)(2)....

(b) Authority, Order of Reference.

1. An order of reference specifying the extent of the master's authority and the type of appointment must be entered in every case assigned to a master. The order of reference must be served on all parties.

2. The following proceedings may be referred to a master:

A. all decedent estate hearings[.]

**31.** Alaska R. Prob. P. 2(b), (e).

**32.** Alaska R. Prob. P. 2(b)(3) (master's report not binding until approved by a superior court judge).

**33.** Alaska R. Prob. P. 2(f)(1).

subject matter jurisdiction over Charles's cross-petition regarding the Washington property.

### b. The superior court had personal jurisdiction over Wayne Jr.

Wayne Jr. contends that the superior court's assertion of personal jurisdiction over him violated his due process rights and that the judgment is void and should have been set aside. He argues that he did not have the requisite "minimum contacts" with Alaska because he has not visited the state since 1986 and has no property in Alaska except for his interest in his father's estate.

 We have interpreted Alaska's "long-arm" personal jurisdiction statute to encompass " 'any case . . . in which the exercise of jurisdiction is permissible under the Fourteenth Amendment.' " [34] As the United States Supreme Court explained in *International Shoe Co. v. Washington,* due process requires that a defendant have "minimum contacts" with the forum state such that maintaining a suit in the forum state "does not offend 'traditional notions of fair play and substantial justice.' " [35] When a controversy is "related to" or "arises out of" a defendant's contacts with the forum state, the exercise of jurisdiction is considered "specific" and justified by the relationship among the defendant, the forum, and the litigation.[36] We have further stressed that "emphasis should be placed on 'the quality rather than the quantity of the contacts.' " [37]

 Wayne Jr.'s interest as an heir to his father's estate provides sufficient contact for the exercise of personal jurisdiction specific to matters relating to or arising out of the administration of the estate. Wayne Jr.'s joinder in Elizabeth's 2003 motion to re-open the estate proceedings provides additional contact, and also provides a basis for personal jurisdiction under the theory of consent.[38] Alaska Statute 09.05.010 provides that "[t]he voluntary appearance of the defendant is equivalent to personal service of a copy of the summons and complaint upon the defendant." We have interpreted this provision to mean that "[a] court acquires personal jurisdiction over one who appears without challenging jurisdiction." [39] By voluntarily appearing and asking for the estate proceedings to be re-opened, Wayne Jr. perfected the superior court's personal jurisdiction over him with respect to all matters relating to or arising out of the probate proceedings.

### c. With one possible exception, Joseph and Wayne Jr. were not denied due process.

Joseph and Wayne Jr. argue that the superior court violated their due process rights and thus that the judgment is void and should have been set aside. They contend that because they were never formally served with a summons and a copy of

**34.** *Polar Supply Co., v. Steelmaster Indus., Inc.,* 127 P.3d 52, 55 (Alaska 2006) (quoting *Cramer v. Wade,* 985 P.2d 467, 471 (Alaska 1999)); *see also Am. Nat'l Bank & Trust Co. v. Int'l Seafoods of Alaska, Inc.,* 735 P.2d 747, 749 (Alaska 1987) (quoting AS 09.05.015 (authorizing Alaska courts "to assert jurisdiction to the maximum extent permitted by due process.")).

**35.** 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

**36.** *Glover v. W. Air Lines, Inc.,* 745 P.2d 1365, 1367 (Alaska 1987) (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

**37.** *Polar Supply,* 127 P.3d at 57 (quoting *Jonz v. Garrett/Airesearch Corp.,* 490 P.2d 1197, 1199 (Alaska 1971) (citing *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. 154)).

**38.** The superior court's finding of personal jurisdiction over Wayne Jr. was based on his "submi[ssion] to the Court's jurisdiction when [Elizabeth] filed the petition to remove the personal representative in this matter." Wayne Jr. joined, as noted above, in Elizabeth's motion to re-open the estate, not in her petition to remove Charles as the personal representative. But by voluntarily appearing without any stated limitations in connection with a notice to re-open the probate proceedings generally, as opposed to a specific petition for relief, Joseph and Wayne Jr.'s consent to personal jurisdiction for all matters relating to or arising from the probate proceedings is more readily found. *See, e.g.,* Alaska R. Civ. P. 81(c) (general appearance by counsel); *id.* at 81(d) (limited appearance by counsel).

**39.** *Kenai Peninsula Borough v. English Bay Vill. Corp.,* 781 P.2d 6, 8–9 (Alaska 1989).

Charles's cross-petition under Civil Rule 4, they were not aware that they had an obligation or right to respond to Charles's cross-petition or that the cross-petition could affect their interests in the Washington property. They further argue that the cross-petition's failure to describe them as "parties" and the superior court's failure to mail copies of its orders directly to them contributed to their perception that the litigation would not affect their interests in the Washington property. Citing *Aguchak v. Montgomery Ward Co.*,[40] they note that this court has previously reversed a superior court judgment based on a denial of due process in connection with a defective summons.

We reject Joseph and Wayne Jr.'s arguments for three reasons. First, we have already held that by voluntarily and generally appearing in the probate proceedings by way of his joinder in Elizabeth's motion to re-open the estate proceedings, Wayne Jr. submitted to the superior court's personal jurisdiction for all matters relating to or arising from the probate proceedings without the need for formal service of process under Civil Rule 4. The same holds true for Joseph. Second, Charles complied with the notice requirements of the probate statutes, thereby affording Joseph and Wayne Jr. sufficient notice of the claims being asserted against them with respect to the Washington property and, therefore, sufficient due process.[41] Lastly, even if the court did not appreciate that Joseph and Wayne Jr. were not formally represented by Donnellan and therefore failed to distribute copies of pre-trial orders to them, it is clear from the e-mails among Elizabeth, Joseph, and Wayne Jr. that both Joseph and Wayne Jr. were

fully aware of all of the issues raised by Charles, the specific nature of the relief sought by Charles, and the time and place of trial. Joseph and Wayne Jr. faced no notice-related impediment to appearing and participating at trial; rather, they intentionally declined to do so.

Alaska Statute 13.06.120 describes the substantive notice requirements for proceedings involving "trusts, nonprobate assets, or estates of decedents." Pleadings for such proceedings must describe the "interests to be affected ... [and] give reasonable information to owners by name or class, by reference to the instrument creating the interests, or in other appropriate manner."[42] Under AS 13.06.120(3) and AS 13.06.110(a)(1), service by ordinary first-class mail is sufficient procedural notice. Charles complied with the method-of-service requirements of AS 13.06.110 by mailing a copy of the cross-petition to Joseph and Wayne Jr. at their respective addresses, and the language of Charles's cross-petition satisfied the substantive notice requirements of AS 13.06.120.[43] The record is clear, and there is no dispute that Joseph and Wayne Jr. received Charles's pleadings and were aware of the pendency of the proceedings and the nature of the relief Charles sought. Statutory notice requirements were satisfied.

Apart from these statutory requirements, due process requires that any action involving " 'deprivation of life, liberty or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case.' "[44] Form and manner of notice must be " 'rea-

**40.** 520 P.2d 1352 (Alaska 1974).

**41.** We do not reach the question whether, or under what circumstances, compliance with the notice requirements of the probate statutes *by itself* is sufficient to perfect personal jurisdiction over a party who has neither voluntarily appeared in a probate proceeding nor been served in accordance with Civil Rule 4. *Cf.* AS 09.05.015(a) (providing that court's personal jurisdiction over a person is predicated on service "according to the rules of civil procedure."). *See generally* AMERICAN LAW INSTITUTE, *supra* note 14, at 31–32 (stating that statutory notice is traditionally sufficient for in rem or quasi in rem jurisdiction in probate proceedings, but that some

probate proceedings may require service under general standards of civil procedure).

**42.** AS 13.06.120(1).

**43.** Charles's attorney also mailed a copy of his answer to Elizabeth's petition to remove Charles as the personal representative to Joseph and Wayne Jr. This pleading discussed Charles's interest in a court-established trust for the Washington property.

**44.** *Aguchak,* 520 P.2d at 1356 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

sonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " [45] In *Aguchak*, this court recognized that to satisfy due process, notice must be properly tailored to the " 'capacities and circumstances' " of the defendant.[46]

Joseph and Wayne Jr. argue that the notice they received was insufficient in light of their "capacities and circumstances," portraying themselves as "lay persons who reasonably could not anticipate that [ ] anyone considered them parties to this case." They claim they had "no reasonable notice" that they had an obligation to respond or that they could be bound by the litigation between Charles and Elizabeth. Charles responds that e-mail correspondence among the siblings, which he obtained through discovery, shows that Joseph and Wayne Jr. *"knew* that they were parties to the case" and *"participated* in the litigation through Elizabeth and her attorney." (Emphasis in original.)

We agree with Charles. Although Joseph and Wayne Jr. did not receive papers directly from the court after they joined in Elizabeth's motion to re-open the probate proceedings, they were formally served with: (1) the stipulation to re-open the proceedings; (2) the petition to remove Charles as personal representative; (3) Charles's opposition to the removal petition and his cross-petition to establish the express trust; (4) papers regarding witness lists, depositions, and Elizabeth's motion to stay Charles's cross-petition; and (5) Elizabeth's and Charles's post-trial briefing (after Joseph attended trial before the Standing Master). There is no dispute that Joseph and Wayne Jr. participated in extensive e-mail communications with Elizabeth about the case, and they concede they were aware of both the nature of the litigation and that Charles sought orders affecting the Washington property. Joseph and Wayne Jr. had adequate notice and an opportunity to be heard, and their claim of inade-

quate pre-trial notice giving rise to a due process violation is without merit.

 However, we are unable to determine from the record before us whether this holds true with regard to post-trial due process concerns. When Standing Master Closuit entered her findings, conclusions, and recommendations, she appended the requisite Civil Rule 53 notice that objections must be filed within ten days. But the papers were distributed only to attorneys Borgeson and Donnellan, and not to Joseph and Wayne Jr.

We have held that when the court fails to distribute a judgment to a party, actual knowledge of the entry of judgment is necessary to trigger the time for actions predicated on the court's distribution of the judgment.[47] We stated that "[i]t would be inequitable to charge [a party] with the court clerk's lapse," [48] and that observation applies in this context as well. We are unable to discern when Joseph and Wayne Jr. actually received knowledge of Standing Master Closuit's findings, conclusions, and recommendations and the notice regarding the time limit for objections. We therefore are unable to determine whether Joseph and Wayne Jr. actually received adequate notice and an opportunity to be heard before Judge Wood entered his order regarding the Washington property, and we remand for further proceedings on this narrow issue.

Standing Master Closuit's findings, conclusions, and recommendations were issued in December 2004. Judge Wood did not issue his order regarding the Washington property until June 2005. On remand the superior court should determine: (1) when Joseph and Wayne Jr. had actual knowledge of the master's findings, conclusions, and recommendations and the time limit for objections; and (2) whether, before Judge Wood's final order, Joseph and Wayne Jr. had an adequate opportunity to file objections, request oral ar-

---

**45.** *Id.* (quoting *Mullane,* 339 U.S. at 314, 70 S.Ct. 652).

**46.** *Id.* at 1357 (quoting *Goldberg v. Kelly,* 397 U.S. 254, 268–69, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).

**47.** *Princiotta v. Mun. of Anchorage,* 785 P.2d 559, 561 (Alaska 1990).

**48.** *Id.*

gument, request an opportunity to submit additional briefing, move for the taking of additional evidence, or seek a trial de novo.[49] If Joseph and Wayne Jr. did not have that opportunity before Judge Wood entered his final order, then their right to due process requires that they be afforded that opportunity on remand. If on the other hand: (1) Joseph and Wayne Jr. actually knew about the master's findings, conclusions, and recommendations and the need for timely objections well before Judge Wood issued his final ruling; and (2) simply failed to take action on their own behalf, no further action by the superior court may be necessary.

### 3. Rule 60(b)(1) and (3)

Joseph and Wayne Jr. argue that Judge Wood abused his discretion in denying relief from judgment without an evidentiary hearing on their Rule 60(b)(1) and (3) grounds of excusable neglect and misrepresentation.[50] They assert that their excusable neglect stemmed from "their reasonable failure to comprehend that anyone considered them parties to this case" and they blame their lack of understanding on the circumstances discussed in support of their jurisdictional and due process claims. They base their misrepresentation theory on erroneous oral and written statements made by Charles's attorney.

#### a. Failure to hold evidentiary hearing

■ Joseph and Wayne Jr. assert that Judge Wood abused his discretion by failing to hold an evidentiary hearing.[51] They argue that their affidavit testimony created disputed issues of fact that could not be summarily resolved. But Joseph and Wayne Jr. do not cite to anything in the record demonstrating that they requested an evidentiary hearing prior to Judge Wood's denial of their Rule 60(b) motion. Nothing in their memoranda reflects either a request for an evidentiary hearing or an argument that factual disputes precluded a summary disposition of the motion, and the transcript of the oral argument on the motion fails to reveal any such request or argument. Not until their reconsideration motion did Joseph and Wayne Jr. even imply that an evidentiary hearing might have been warranted. Finally, Joseph and Wayne Jr. did not include "failure to hold an evidentiary hearing" or "erroneous denial of motion for reconsideration regarding failure to hold an evidentiary hearing" in their points on appeal.

■ Issues not raised in the superior court and not listed in a statement of points on appeal generally are not properly before us.[52] We will consider an issue not raised below or in a statement of points on appeal if it reflects plain error, which exists if "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[53]

We cannot conclude that the failure to sua sponte order an unrequested discretionary evidentiary hearing on the Rule 60(b) motion was an obvious mistake that created a high likelihood of injustice. In *Stinson v. Holder* we held that it was an abuse of discretion for the trial court to deny a Rule 60(b) motion without holding an evidentiary hearing that had been expressly requested because the motion papers revealed a genuine dispute about the defendant's competence to participate meaningfully in an earlier trial resulting

---

49. Alaska R. Prob. P. 2(f).

50. Alaska R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; ... (3) fraud ..., misrepresentation, or other misconduct of an adverse party....").

51. Joseph and Wayne Jr. do not cite to any Rule 60(b) cases regarding denial of an evidentiary

hearing or the general standard of review. In *Stinson v. Holder*, 996 P.2d 1238, 1242 (Alaska 2000), we reviewed the denial of an evidentiary hearing for a Rule 60(b) motion for abuse of discretion.

52. Alaska R.App. P. 204(e) (providing that appellate court will consider only issues included in the statement of points on appeal); *Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 11 (Alaska 1979).

53. *Miller v. Sears*, 636 P.2d at 1189.

in a judgment against him.[54] However, we noted that a failure to conduct an evidentiary hearing or resolve fact disputes does not inevitably require reversal—there must also be a showing of prejudice.[55] We concluded that in light of the "prima facie showing of incompetence, and the plausibility of his claim that his incapacity prejudiced him at trial," the Rule 60(b) motion could not be decided without a resolution of the factual disputes concerning his competence.[56]

 Given the evidentiary record here, it is not readily obvious that: (1) Joseph and Wayne Jr. presented a plausible claim that they reasonably failed to comprehend the extent of their participation in the probate proceedings or that they would be bound by the results of the trial they helped their sister instigate; or (2) it would have been an abuse of discretion to deny an evidentiary hearing had one been requested. Joseph and Wayne Jr. made a full and detailed presentation of facts in their affidavits and in their written and oral legal arguments to Judge Wood, and they do not make a persuasive argument that a formal evidentiary hearing would have provided Judge Wood with any meaningful additions to the record.[57] Thus it also is not readily obvious that the failure to hold an evidentiary hearing, even if erroneous, was prejudicial. Under these circumstances the lack of an evidentia-ry hearing on Joseph and Wayne Jr.'s Rule 60(b) motion does not warrant reversal.

### b. Excusable neglect and mistake

 For relief based on excusable neglect, a party must show both neglect and a valid excuse for that neglect.[58] Judge Wood concluded that Joseph and Wayne Jr. received adequate notice of the cross-petition and that their failure to defend their interests was "not the result of excusable neglect." The e-mails among Elizabeth, Joseph, and Wayne Jr. support a conclusion that the failure to appear and to defend the cross-petition was intentional and strategic, not excusable neglect or a mistake. In light of that conclusion and our reasoning regarding Joseph and Wayne Jr.'s due process arguments, we hold that Judge Wood did not abuse his discretion by rejecting excusable neglect as a ground for Rule 60(b) relief.

### c. Misrepresentation

 To obtain Rule 60(b)(3) relief, the moving parties must prove by clear and convincing evidence that a material misrepresentation prevented the parties from fully and fairly presenting their case.[59] Joseph and Wayne Jr.'s misrepresentation theory is based on statements made by Charles's attorney, including: (1) an oral statement allegedly made to Joseph shortly before trial

---

**54.** 996 P.2d at 1242.

**55.** *Id.*

**56.** *Id.*

**57.** The evidence they apparently wished to present was live, but duplicative, testimony about their alleged prior subjective understandings. We have noted in another context that self-serving litigation-related expressions of prior subjective intent or understanding are generally not considered probative of parties' reasonable expectations when they entered into a contract; the court instead must look to express manifestations of each party's understanding. *See Peterson v. Wirum*, 625 P.2d 866, 870 (Alaska 1981). This does not preclude a party from testifying about its "understanding in objective terms ... sufficiently detailed to enable [trier of fact] to form its own judgment as to the reasonableness of [the party's understanding] and the likelihood that [the other party] would have the same understanding." *Alaska Tae Woong Venture, Inc. v.*

*Westward Seafoods, Inc.*, 963 P.2d 1055, 1067 (Alaska 1998). Here, Joseph and Wayne Jr. already expressed their alleged subjective understanding that they neither were parties to nor could be bound by the proceedings in their affidavit testimony. The objective facts giving rise to the alleged understanding were not much disputed: they had notice of the proceeding; they were aware of the nature and scope of relief Charles sought; and they participated in strategizing and preparing for trial, telling Elizabeth to "take the ball and ... run" for them. The ultimate issue before Judge Wood was whether Joseph and Wayne Jr.'s alleged subjective understanding was objectively reasonable given all of the objective evidence presented, but Joseph and Wayne Jr. make no showing that an evidentiary hearing was necessary for this determination.

**58.** *Dickerson v. Williams*, 956 P.2d 458, 465 (Alaska 1998) (citation omitted).

**59.** *Harris v. Westfall*, 90 P.3d 167, 173 (Alaska 2004).

indicating that Joseph was "not part of the case"; (2) the erroneous reference to them as "petitioners" in Charles's response to Elizabeth's petition to remove Charles as personal representative; and (3) an erroneous statement at the start of the October 2004 trial that Joseph and Wayne Jr. had "filed motions of joinder in Mrs. Cook's petition" and that because of this, Charles had "treated them like parties in this matter."

Joseph and Wayne Jr. have not met their heavy burden of showing clear and convincing evidence in the record that these alleged misrepresentations were not only material but also prevented them from fully and fairly opposing Charles's cross-petition. Again, the e-mails among Elizabeth, Joseph, and Wayne Jr. demonstrate that the failure to appear and defend the cross-claim was intentional and strategic, not the result of any alleged misstatements by Charles's attorney. Because Joseph and Wayne Jr. failed to meet their burden of proof on this issue, we hold that Judge Wood did not abuse his discretion by rejecting misrepresentation as a ground for Rule 60(b) relief.

### B. Elizabeth's Appeal

#### 1. Denial of the petition to remove Charles as personal representative

 Alaska Statute 13.16.295 governs removal of personal representatives for cause and provides in relevant part:

> Cause for removal exists when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking appointment intentionally misrepresented material facts in the proceedings leading up to appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of the office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

 Although Elizabeth appealed the denial of her petition to remove Charles as personal representative, she did not brief the point and has therefore waived it.[60] But, in connection with Elizabeth's appeal, Joseph and Wayne Jr. argue that it was plain error to deny Elizabeth's petition to remove Charles as personal representative of the estate,[61] contending that Charles neglected his administrative duties, breached his fiduciary duties, failed to "present any evidence of any financial accounting of his 15 years of tenure as PR of the Estate," failed to devise a plan to generate income from the Fairbanks property, and refused to allow Elizabeth to inspect their father's memorabilia.

Charles argues that he presented witnesses and exhibits, while his siblings did not call any witnesses and "failed to present . . . any evidence that would require that Charles be removed as personal representative for cause." In that regard we note that the record for review is the actual trial record, not the trial record that might have been created had Elizabeth, Joseph, and Wayne Jr. presented evidence at trial.

Joseph and Wayne Jr. point to certain findings by Standing Master Closuit that Charles had not done all that he should have done as personal representative. But Standing Master Closuit also found that Charles had worked with an attorney to create a trust document and had asked "the rest of the family" to transfer their interests in the Washington property to a trust in 2002, and that Charles had received no cooperation. Standing Master Closuit stated:

> Although there has been significant delay in complete administration of this estate, much of the delay has been due to the family's inability to agree about the issues to be resolved by these proceedings. This is not to say that delay of 12+ years in the closing of an estate is desirable or commendable and there has been some inex-

---

**60.** *Wasserman v. Bartholomew,* 38 P.3d 1162, 1171 (Alaska 2002) (finding waiver when party listed point on appeal but failed to brief it).

**61.** Joseph and Wayne Jr. acknowledge that to sustain Elizabeth's appeal on this issue they must show that the superior court committed plain error because there were no objections to the

standing master's proposed findings ultimately adopted by Judge Wood. *Duffus v. Duffus,* 72 P.3d 313, 318–19 (Alaska 2003) (failing to object at the trial court level to master's proposed child support calculations precluded appellate review except for plain error).

cusable delay by the PR in completing the actions necessary to close this estate.

Standing Master Closuit also noted that if Charles were removed as personal representative, "given the discord these proceedings have created in the family," someone outside the family likely would have to be appointed, and having a new personal representative and new counsel would be less efficient than ensuring that Charles properly completed the administration of the estate. Standing Master Closuit concluded that there was not a preponderance of the evidence supporting Charles's removal as the personal representative, and recommended that the removal petition be denied.

Judge Wood accepted the recommendation without further explanation. Given the actual evidence at trial, the findings, the explanation of the recommendation to deny the petition to remove Charles, and the lack of any obvious mistake creating a high likelihood of injustice, we cannot find plain error or conclude that Judge Wood abused his discretion by denying the motion to remove Charles as personal representative.

### 2. Imposition of a constructive trust on the Washington property and the order to convey the property to the new express trust created to effectuate Fields's testamentary intent

As the original petitioner for Charles's removal as personal representative, Elizabeth had the opportunity to present her case first. But as previously planned, Donnellan stated that Elizabeth was "just going to rely on the file" to speak for itself. Borgeson then presented Charles's case both in opposition to the removal petition and in support of the cross-petition regarding the Washington property and the unformed residuary trust,

calling two witnesses and introducing fourteen exhibits into evidence. When that presentation was completed, counsel moved directly to closing arguments. Thus the only evidence presented at trial regarding the Washington property and the unformed residuary trust was presented by Charles, and the standing master specifically found the witnesses' testimony "very credible."

Based on the evidence presented, Standing Master Closuit found that Fields had articulated a clear wish for the Washington property to be held in trust by his four children for use by all of his descendants. She found that his four children had agreed to do this, but that a trust document was never executed. She also found that Elizabeth, Joseph, and Wayne Jr. refused to cooperate to convey the Washington property into an appropriate trust.

Under these conditions, AS 13.36.170(a) authorizes the court to "prescribe the conditions for conveying the interest to the settlor or the settlor's successor in interest." [62] A constructive trust is an equitable remedy available to the superior court upon a showing of clear and convincing evidence that the party upon whom the trust will be imposed has been unjustly enriched by receiving assets that belong to the party in whose favor the trust will be created.[63] Here, Standing Master Closuit found "clear and convincing evidence that the family will be unjustly enriched if ... allowed to retain the [Washington] property (or to sell or otherwise transfer it) with no restrictions." She recommended that the superior court order Fields's heirs to convey their interests in the Washington property to the estate. Judge Wood accepted the standing master's findings and recommendations. By imposing the constructive trust on the Washington proper-

---

**62.** In relevant part AS 13.36.170 provides:
When an interest in real property is conveyed by deed to a person in a trust that is unenforceable under AS 09.25.010—09.25.020 and the intended trustee or the trustee's successor in interest holds title but refuses to carry out the trust because of AS 09.25.010—09.25.020, the intended trustee or the trustee's successor in interest ... shall convey the interest in real property to the settlor or the settlor's successor in interest. A court having jurisdiction may

prescribe the conditions for conveying the interest to the settlor or the settlor's successor in interest.

A "settlor" is "one who sets up a trust." BLACK'S LAW DICTIONARY 1405 (8th ed.2004). Thus Fields was the "settlor" and his "successors in interest" are his estate and the trust he named in his will for the disposition of his residuary estate.

**63.** *Riddell,* 76 P.3d at 852.

ty and ordering Elizabeth, Joseph, Wayne Jr., and Charles to convey their interests in the Washington property to the new express residuary trust, Judge Wood exercised his equitable power to effectuate AS 13.36.170(a) and to prevent the Fields children from retaining property obtained by unjust means.

Elizabeth presents three indirect challenges to Judge Wood's decision: (1) the court abused its discretion by delegating a "complex real property adjudication" to a standing master; [64] (2) the court lacked subject matter jurisdiction over the Washington property because "it is protected by Washington law"; and (3) Washington's three-year statute of limitations on equitable remedies bars Charles's claim.[65] Charles responds that: (1) Elizabeth waived these defenses by failing to raise them in the superior court; (2) even if Washington law applied, the outcome would be the same because "Washington applies the same constructive trust principles"; and (3) even if Washington's three-year statute of limitations applied, his petition was timely because the limitations period did not begin to run until 2003 when his siblings refused to quitclaim their interests in the Washington property.

### a. Reference to the probate master

■■■ We need not consider whether *Dean v. Firor's* limitation on references to a master [66] would preclude referring Charles's cross-petition to the standing probate master [67] because Elizabeth has waived this argument. An important element of *Dean v. Firor* is the concept of waiver and our holding that "a party objecting to the propriety of the reference [to a master] should do so prior

to or at the time of the reference" or "at the earliest possible opportunity." [68] Elizabeth does not point to anything in the record to demonstrate that she made a peremptory or other challenge specifically to Standing Master Closuit or generally to the fact that a master would be conducting the trial, despite being aware early on that Standing Master Closuit would be conducting the trial on the two petitions. Elizabeth therefore waived any objection she may have had to the reference of Charles's cross-petition to the standing master for trial.

### b. In rem jurisdiction

■■■ Elizabeth first raised a subject matter jurisdiction defense in her post-trial brief, conceding that the probate court "has jurisdiction to determine the intent of the decedent" but arguing that it would have "no jurisdiction to entertain" an in rem action respecting property in Washington. Elizabeth also appears to raise this argument in her brief here. But although it is well-settled that courts of one state may not directly affect or transfer title to real property situated in another state, a court may "indirectly affect title to property located in another state through its power over individuals under the court's jurisdiction." [69] The superior court's authority to indirectly affect title to the Washington property in this case arises from its personal jurisdiction over the four "owners" of the property.

### c. Washington statute of limitations

Elizabeth does not point to anything in the record to show that she objected to the appli-

---

**64.** Elizabeth cites *Dean v. Firor*, 681 P.2d 321, 328 (Alaska 1984) (holding that because questions of law lie with a judge, it was error to refer to a master to decide whether a fraudulent conveyance of real property occurred).

**65.** Elizabeth cites *Rausch v. Devine*, 80 P.3d 733, 742 (Alaska 2003) (discussing existence and extent of equitable interests in land governed by law of land's situs) and Wash. Rev.Code § 4.16.080(3) (providing three-year limitation period for action on oral contract or liability).

**66.** *See supra* note 60.

**67.** Probate and similar rules established by this court expressly authorize and delineate the use of

masters in specific proceedings. See, for example, Alaska Rule Probate Procedure 2, Alaska Adoption Rule 3, CINA Rule 4, and Alaska Delinquency Rule 4, all of which post-date *Dean v. Firor*. The dispute in this case appears to have encompassed a variety of matters clearly within a probate master's expertise and the authority to conduct all hearings related to the decedent's estate, including factual issues of the decedent's intent and application of probate statutes for estates and trusts.

**68.** *Dean*, 681 P.2d at 326–27.

**69.** *Sylvester v. Sylvester*, 723 P.2d 1253, 1260 (Alaska 1986) (citing *Fall v. Eastin*, 215 U.S. 1, 8–12, 30 S.Ct. 3, 54 L.Ed. 65 (1909)).

cation of Alaska law instead of Washington law at trial, nor did she list erroneous choice of state law as a point on appeal. In her brief Elizabeth limits her argument to contending that a Washington statute of limitations precludes Charles's claim for equitable relief.

Joseph and Wayne Jr. did not raise this issue in their Rule 60(b) motion. In their points on appeal they asserted as error that an unidentified "statute of limitations barred [Charles's] claim for establishment of a constructive trust," but they did not brief any issues of Washington law, including the statute of limitations.

■ We agree with Elizabeth that *Rausch v. Devine*[70] required the superior court to apply Washington substantive law to Charles's equitable claims concerning the Washington property. We will assume the court's failure to apply substantive Washington law to Charles's equitable claim is "plain error" and therefore reviewable under the circumstances of this appeal, but because the only aspect of Washington law conceivably raised by the points on appeal and briefing is the statute of limitations, we limit our consideration of Washington law to that issue.[71]

■ Normally we would first decide whether the applicable Washington statute of limitations is substantive or procedural. In *Marine Construction & Design Co. v. Vessel Tim,*[72] we explained the difference and its importance. A statute of limitations on the time for commencing a cause of action is generally a matter of procedure and is governed by the law of the forum state.[73] But where the cause of action is governed by foreign law and a provision for a time limitation is directed so specifically to the cause of action that it is a condition of the right to bring suit, the foreign limitation provision will govern the right to bring suit.[74]

■ We need not reach this threshold issue here because under the laws of both Washington and Alaska, a statute of limitations defense not raised before or at trial is waived.[75] We accordingly reject the specification of error for failure to apply Washington's three-year statute of limitations to Charles's cross-petition.

## V. CONCLUSION

We AFFIRM the superior court's denial of the petition to remove the personal representative of the estate and find no merit in the substantive legal arguments currently before us on appeal challenging the superior court's analysis and decision to impose a constructive trust over the Washington property. But we REMAND for a determination of whether Joseph and Wayne Jr. received due process-compliant post-trial notice and opportunity to be heard on the standing master's findings, conclusions, and recommendations prior to entry of the superior court's order.

---

**70.** 80 P.3d at 742.

**71.** Charles argues, without contest, that with the exception of the applicable statute of limitations, Washington law on constructive trusts essentially mirrors Alaska law. *Compare Riddell*, 76 P.3d at 852 (constructive trust properly imposed to prevent unjust enrichment when someone unfairly held property that rightfully belonged to another), *with Scymanski v. Dufault*, 80 Wash.2d 77, 491 P.2d 1050, 1057 (1971) ("A constructive trust may arise even though acquisition of the property was not wrongful. It arises where the retention of the property would result in the unjust enrichment of the person retaining it."), *In re Marriage of Lutz*, 74 Wash.App. 356, 873 P.2d 566, 571 (1994) ("A court sitting in equity will impose a constructive trust if there is clear,

cogent, and convincing evidence of the basis for impressing the trust."), *and Proctor v. Forsythe*, 4 Wash.App. 238, 480 P.2d 511, 514 (1971) ("A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."). We do not reach this issue.

**72.** 434 P.2d 683 (Alaska 1967).

**73.** *Id.* at 686.

**74.** *Id.* at 686–87.

**75.** *See Barrett v. Byrnes*, 556 P.2d 1254, 1255 (Alaska 1977); *Boyle v. Clark*, 47 Wash.2d 418, 287 P.2d 1006, 1009–10 (1955).