*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SUZANNE C. DIMEFF and THE OLETA COWAN TRUST, | ) ) ) |
| Appellants, | ) Supreme Court No. S-14060 ) |
| v. | ) Superior Court No. 3KN-04-00052 PR ) |
| ESTATE OF ROBERT MERLE COWAN) and DALE DOLIFKA, PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT COWAN, | ) O P I N I O N ) ) No. 6779 – May 3, 2013 ) ) |
| Appellees. | ) ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Suzanne C. Etpison, Dimeff Law Office LLP, Rancho Santa Fe, California, and Suzelle M. Smith and Don Howarth, Howarth & Smith, Los Angeles, California, for Appellants. Michael W. Flanigan, Flanigan & Bataille, Anchorage, for Appellees.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

WINFREE, Justice.

## I. INTRODUCTION

This case involves a dispute over the disposition of a deceased Alaska attorney's interest in attorney's fees from his participation, through a joint venture, in the

Exxon Valdez oil spill litigation. The attorney's sister, individually and on behalf of their mother's trust, asserted claims to the attorney's fees, and the attorney's estate opposed those claims. The parties settled the dispute by agreeing that the right to attorney's fees was an estate asset, and the settlement was approved by the Alaska superior court in the deceased attorney's probate proceedings. The attorney's fees were ultimately paid to the joint venture. Both the estate and the sister then sought the deceased attorney's interest in the joint venture's attorney's fees. The estate requested that the superior court enjoin the sister's claims as violations of the settlement agreement. Around this time, the joint venture deposited what it calculated as the deceased attorney's share of the joint venture's attorney's fees in a federal interpleader action in California.

The superior court ruled that under the settlement agreement, as between the estate, the sister, and the mother's trust, the estate had the right to the deceased attorney's share of the attorney's fees held by the joint venture. The superior court therefore enjoined the sister from pursuing claims to the deceased attorney's share of the joint venture's attorney's fees. The superior court later modified the injunction to allow the sister's participation in the federal interpleader action.

The sister appeals, arguing that the superior court exceeded its jurisdiction, issued its judgment without proper procedures, improperly interpreted the settlement agreement, prohibited her from pursuing contract claims against third parties, and entered a vague and ambiguous judgment. She also argues that the superior court's ruling was improperly expanded to allow her participation in the federal interpleader action. Because we conclude that the superior court acted within its jurisdiction, followed adequate procedures, did not prevent the sister from pursuing her individual contract claims against the joint venture, was not vague and ambiguous in its ruling, and did not

expand the ruling's substance when modifying it, we affirm the superior court's orders and judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

On March 24, 1989, the oil tanker EXXON VALDEZ ran aground on Bligh Reef in Prince William Sound, spilling 11 million gallons of crude oil. Litigation followed — in what became known as the Exxon Valdez Oil Spill (EVOS) Litigation, over 50 law firms and 30,000 plaintiffs appeared before the United States District Court for the District of Alaska.

Several years later, compensatory damages were calculated at $507.5 million and punitive damages at $2.5 billion.[1] After appeals and remands, the United States Supreme Court resolved the case in 2008, ruling that punitive damages could not exceed $507.5 million.[2] Payments to individual plaintiffs and attorneys were made through a qualified settlement fund.

In 1989, in anticipation of the EVOS Litigation, Alaska attorneys William Bixby and Robert Cowan agreed to start a joint venture with California attorney Richard Gerry and his law firm, Casey Gerry. Alaska attorney C. Michael Hough joined the joint venture six years later. Cowan's sister, Suzanne Dimeff, then known as Suzanne Etpison, was an attorney at Casey Gerry.

In 1993 the joint venturers signed a memorandum of understanding providing for the advancement and repayment of costs prior to division of the attorney's fees to be received by the joint venture. The memorandum established criteria for dividing fees between the joint venturers, but did not mention what would happen if a

---

[1] *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 476, 515 (2008).

[2] *Id.* at 515.

joint venturer died. The memorandum also referenced a separate agreement between Casey Gerry, Richard Gerry, and Dimeff as a matter solely between them.

The agreement between Casey Gerry, Richard Gerry, and Dimeff described Dimeff's salary and bonus opportunities as a Casey Gerry employee. It specified that the parties would arbitrate disputes arising over compensation. It also provided that the Casey Gerry firm would pay Richard Gerry's share of EVOS Litigation attorney's fees to his heirs if he died prior to the dissolution of the joint venture.

In late 2003 the joint venturers agreed to an amendment and restatement of the joint venture memorandum of understanding. Cowan was ill, but represented by an attorney. The amendment and restatement detailed the percentage of the joint venture's EVOS Litigation attorney's fees that it would distribute to Cowan but did not discuss survivorship rights. The amendment was executed by Cowan's attorney in December 2003, after Cowan's death.

The surviving joint venturers then entered another agreement documenting the joint venture's continued existence without Cowan. The agreement noted that the joint venture's "only source of income [is] fees based on the contingency fee agreements with its clients in the [EVOS] Litigation." The agreement also provided that "[t]he Parties desire to document their . . . agreement regarding a deceased Party's rights in the event of a dissociation of such Party from the Venture." The agreement specified that "the heirs, beneficiaries, assigns or personal representative . . . or . . . trustee, as applicable" would be paid the EVOS Litigation attorney's fees that would have been due a joint venture member. The agreement was executed in April and May 2004. Cowan's mother, Oleta Cowan, signed a separate document as "The Heir of Robert M. Cowan," providing, "[t]he undersigned has reviewed the Agreement among Firm, Gerry, Bixby and Hough to which this page is attached and agrees to the provisions therein."

## B.  Proceedings

### 1.  Alaska probate

Cowan died in November 2003.  In December, Daniel Aaronson, Cowan's stepson, filed in the Kenai superior court for appointment as the personal representative for Cowan's estate and for informal probate of Cowan's 2003 will.  Dimeff appeared on Oleta's behalf and contested the 2003 will.   Aaronson was appointed as personal representative, but resigned; Dale Dolifka later became the personal representative of Cowan's estate (Cowan Estate).

### 2.  California state court action

In May 2005 Dimeff and Oleta filed a complaint in the California superior court in San Diego for declaratory relief against the Cowan Estate, the joint venturers, and Cowan's stepchildren.  Dimeff and Oleta sought the following declaration:  "[A]ny proceeds due to [Cowan] arising from the Joint Venture Memorandum of Understanding dated May 7, 1993 relating to attorneys fees and costs for services related to the [EVOS] litigation shall pass directly to [Cowan's] heir as a non-probate transfer and shall not become part of the [Cowan] probate estate . . . ."

### 3.  Settlement

In 2005, while the Alaska will contest and the California declaratory relief proceedings were pending, the parties involved in both actions reached a global settlement.  The parties to the settlement agreement included Oleta; Dimeff, both individually and as Oleta's representative; Cowan's stepchildren; and the Cowan Estate.  The settlement agreement provided for "a broad global release of any and all claims between the parties."  The settlement agreement contained a stipulation that Cowan's right to EVOS Litigation attorney's fees would pass through the Cowan Estate:

> The parties all agree that Robert Cowan and/or his firm's
> right to attorney fees and costs in the [EVOS] Litigation shall

be distributed as an asset of the Estate of Robert Cowan . . . .
In accordance with this agreement Oleta Cowan and Suzanne Dimeff agree to dismiss their California lawsuit with prejudice.

The settlement agreement also provided that the parties would not file additional litigation and that any unresolved issues would be submitted to arbitration within 30 days. The settlement agreement was filed in the Alaska probate proceedings, and the superior court approved it in September 2008.

The settlement agreement did not, however, actually prevent ongoing disputes over the disposition of Cowan's share of the joint venture's EVOS Litigation attorney's fees, calculated by the joint venture at over $1.9 million. According to Casey Gerry and the joint venture, about one month after the 2005 settlement agreement Dimeff demanded they provide her some of Cowan's share of the joint venture's EVOS Litigation attorney's fees. They alleged that Dimeff claimed she had performed Cowan's work after his death and therefore was entitled to a portion of his share "separate and apart from" payments she received for her own EVOS Litigation work as an attorney for Casey Gerry.

By early 2009, the attorney's fees and costs due the joint venture from the EVOS Litigation were held under the jurisdiction of the United States District Court for the District of Alaska in the EVOS Litigation's Qualified Settlement Fund. The Cowan Estate sought direct payment from the Qualified Settlement Fund for Cowan's share of the joint venture's EVOS Litigation attorney's fees. The joint venture acknowledged the Cowan Estate might be entitled to a distribution from the joint venture, but opposed a direct distribution of funds to the Cowan Estate from the Qualified Settlement Fund Administrator. The District Court agreed with the joint venture and ordered the Qualified Settlement Fund Administrator to pay the funds to the joint venture.

## 4. Alaska superior court orders and federal interpleader

Having been unable to receive Cowan's share of the joint venture's EVOS Litigation attorney's fees directly from the Qualified Settlement Fund, the Cowan Estate returned to the Alaska superior court. In March 2010 the Cowan Estate moved for a cease and desist order preventing Dimeff from interfering with the Cowan Estate's efforts to collect Cowan's share of the joint venture's EVOS Litigation attorney's fees. The Cowan Estate alleged that "the joint venture is failing to disburse funds it admits are the share of the estate because Ms. Dimeff is claiming that the funds are due her." The Cowan Estate also moved for a "status/action hearing" and requested "orders that will give full force and effect to the Court approved Settlement Agreement," and asked the superior court to "bar conduct that undermines the enforcement of said Settlement Agreement."

In April 2010 Dimeff opposed the request for a cease and desist order. Oleta was by then deceased and had named Dimeff as successor beneficiary of the Oleta Cowan Trust; in opposing the motion Dimeff acted individually and on behalf of the Oleta Cowan Trust. Dimeff argued that the Cowan Estate had not shown it was entitled to funds from the joint venture and that the Cowan Estate had no standing to interfere with Dimeff's and Oleta's individual claims against the joint venture. Further, Dimeff argued that the superior court lacked jurisdiction to issue the Cowan Estate's requested injunction: "There is no language in the Settlement Agreement that grants any continuing jurisdiction over the signatory parties, and . . . [the joint venture] is not a party to, or even mentioned in the 2005 Settlement Agreement." Dimeff did not oppose the request for a status conference, but reiterated that the orders sought by the Cowan Estate would exceed the superior court's jurisdiction by "invit[ing] the court to interfere with internal partnership matters that are not before the court." Dimeff made no request for an evidentiary hearing.

At about the same time, Casey Gerry and the joint venture filed an interpleader action in the United States District Court for the Southern District of California, requesting that the interpleader court determine the party entitled to Cowan's share of the joint venture's EVOS Litigation attorney's fees. Casey Gerry and the joint venture stated that they filed the interpleader action "to most effectively and efficiently litigate various adverse claims to a share of attorneys' fees entrusted to, and held in trust by, Casey Gerry, but ultimately due to the rightful claimant on behalf of the late Robert Cowan, a former fellow joint venturer." Casey Gerry and the joint venture took no position on who was the rightful claimant, but noted the following claims to Cowan's share: (1) the Cowan Estate had initiated arbitration against Casey Gerry and the joint venture seeking the entirety of Cowan's share; (2) Dimeff had individually demanded a portion of Cowan's share for work she claimed she performed on Cowan's behalf after his death; and (3) Dimeff, on behalf of the Oleta Cowan Trust, had demanded arbitration for the entirety of Cowan's share, arguing that Cowan's share passed directly to Oleta as a non-probate asset. Casey Gerry and the joint venture deposited Cowan's share of the joint venture's EVOS Litigation attorney's fees in the federal court and then filed a motion requesting discharge from the interpleader.

Meanwhile, the Alaska superior court held the Cowan Estate's requested status hearing in April 2010. The Cowan Estate reiterated its argument for a cease and desist order barring Dimeff and the Oleta Cowan Trust from seeking Cowan's share of the joint venture's EVOS Litigation attorney's fees. The Cowan Estate argued that the superior court "can obviously enforce the settlement agreement against the parties to the settlement agreement. [Dimeff] was a party, as was Oleta Cowan. . . . [The superior court] can enjoin both of those parties from violating the settlement agreement." The Cowan Estate specifically argued that "Oleta Cowan's claim that this is a non-probate asset is enjoined because it's contrary to the settlement agreement."

Dimeff responded that the Cowan Estate incorrectly assumed the disposition of Cowan's share of EVOS Litigation attorney's fees was controlled by the settlement agreement; she argued that the funds were assets of the joint venture outside the purview of the settlement agreement. Dimeff contended that because the joint venture was not a signatory to the settlement agreement and because it effectively operated as a partnership, California partnership law, not the settlement agreement, governed distribution of the funds. Dimeff described her individual claims to Cowan's share as "excessive workload claims" solely against the joint venture for a portion of "that net amount of profits."

The Cowan Estate responded that Dimeff might have claims against the law firm, Casey Gerry, based on her employment contract, but that "Casey Gerry has no qualms with paying Mr. Cowan's share into the [superior] court." As to the Oleta Cowan Trust's claim that Cowan's share passed to her as a non-probate asset, the Cowan Estate argued that claim was raised in California state court prior to the settlement agreement and was thus subject to the agreement. The Cowan Estate requested an injunction barring further litigation from Dimeff over Cowan's share of the joint venture's EVOS Litigation attorney's fees.

On May 5, 2010, the superior court issued a decision and a cease and desist order. As to Dimeff's individual compensation claims, the superior court concluded that the claims were solely against the Casey Gerry law firm and did not relate to the Cowan Estate. Because "[t]he Casey Gerry law firm is presumably aware of Ms. Dimeff's claims and is nevertheless prepared to pay the $1.9 million Robert Cowan share into a court registry," the superior court concluded it was appropriate to get "the $1.9 million Cowan share into the court registry in the Cowan Estate proceeding" and would therefore issue a cease and desist order preventing Dimeff from "trying to tie up the $1.9 million rather than permit it to go into [the superior court's] registry." As to the Oleta Cowan

Trust's claim to Cowan's share of the joint venture's EVOS Litigation attorney's fees as a non-probate asset, the superior court concluded the claim was barred by the settlement agreement.

The May 2010 cease and desist order broadly prohibited Dimeff from pursuing Cowan's share of the joint venture's EVOS Litigation attorney's fees. The order provided:

> Dimeff shall immediately cease and desist from presenting, filing or pursuing any claims, suits or requests for arbitration, individually or on behalf of others, in any forum other than this Court, that seek to claim, arbitrate or adjudicate the right to any portion of the [EVOS] litigation attorneys fees and costs obtained or to be obtained in the future by [the joint venture], which were either apportioned to Robert Cowan or his Estate by [the joint venture] and/or claimed by the personal representative of the Robert Cowan Estate . . . .

With the same operative language, the order required Dimeff to withdraw any pending claims, suits, or requests for arbitration, and cease and desist any actions in a forum other than the superior court "that would in any manner, impede, prevent or delay payment to the personal representative of the Robert Cowan Estate or alternatively to this Court by way of interpleader, of Robert Cowan's share of the Exxon Valdez litigation attorneys fees and costs." The order additionally allowed Dimeff 30 days to present a motion for permission to pursue claims, litigation, or arbitration in a forum other than the superior court. No such motion was filed.

Dimeff later moved to vacate the cease and desist order, and the superior court held oral argument on September 30, 2010. At oral argument, Dimeff claimed that the superior court had no personal jurisdiction over her individual claims, which she characterized as collateral matters, but admitted that the superior court had personal jurisdiction over her with regard to "the 2005 settlement agreement and any claims

relating to the Cowan will and trust" and jurisdiction over the Oleta Cowan Trust, but again only "to the extent that [Oleta] was making claims or is a beneficiary under the Cowan trust or estate." Dimeff argued that the cease and desist order improperly interfered with her individual claims "involving third parties not before [the superior court]." Dimeff argued that the Cowan Estate "doesn't have a right to interfere with internal partnership matters on how profits are distributed or how they're determined." She asserted that the plain language of the settlement agreement did not purport to determine rights to the joint venture asset and that disposition must be controlled by partnership law. She argued that the superior court could not rewrite the settlement agreement's mention of "EVOS fees and costs" to mean a share of the joint venture's profits.

On September 30, 2010, the superior court entered a partial final judgment. The superior court's previous orders remained in effect, "including without limitation the approval of the 2005 Settlement Agreement, the May 5 Decision, and the May 5 Order." The judgment provided:

> [A]ny claims by Suzanne Dimeff individually, or by Suzanne Dimeff on behalf of Oleta Cowan or the Oleta Cowan Trust against the Robert Cowan Estate's share of [the joint venture] EVOS attorney's fees and costs are barred by virtue of the 2005 Settlement Agreement and the May 5, 2010, Decision and Orders of the court.

The judgment was entered without prejudice to Dimeff individually pursuing her personal compensation claims against the Casey Gerry law firm, but provided that "no such claims may go against the Robert Cowan share of the [joint venture's] EVOS attorney's fees and costs or otherwise impede, delay, or prevent the payment thereof . . . to the . . . Cowan Estate."

**5. Appeal and modification of superior court orders**

Dimeff appealed the partial final judgment to this court. She argued that the judgment was unenforceable because it was vague and ambiguous, it attempted to assert jurisdiction over the res of the interpleader action, it prevented her from participating in the interpleader action and from pursuing her independent contract claims against third parties, and it erroneously interpreted the settlement agreement to "trump" partnership law and to interfere with the joint venture's internal affairs.

After Dimeff filed her opening brief in this court, the federal court presiding over the interpleader action concluded that the superior court's cease and desist order could not lawfully enjoin Dimeff from appearing in the interpleader action. But that court noted the superior court's partial final judgment may have a res judicata effect on Dimeff's and the Oleta Cowan Trust's claims in the interpleader action. The federal court ordered the Cowan Estate to return to the Alaska superior court, withdraw its motion for a cease and desist order, and move to vacate the May 5, 2010 order and to amend the September 30, 2010 partial final judgment.

In response to the Cowan Estate's motion, the superior court vacated its May 5, 2010 order and September 30, 2010 partial final judgment "to permit Dimeff and the [Oleta Cowan] Trust to make, defend and litigate claims in the interpleader action." The superior court noted that the cease and desist order remained in effect as to any other litigation. Furthermore, the superior court explained that it did not intend "to change, amend or modify [its] previous substantive determinations that the [Cowan] Estate is entitled to Robert Cowan's share of the [joint venture] EVOS attorneys fees, including those interpled into the U.S. District Court . . . , by virtue of the 2005 settlement agreement." The superior court issued a second order denying a request from Dimeff to vacate its previous substantive decisions.

Dimeff now continues her appeal before this court, challenging both the original and modified superior court orders.

## III. STANDARD OF REVIEW

"We review questions regarding personal and subject matter jurisdiction de novo because '[j]urisdictional issues are questions of law subject to this court's independent judgment.' "[3] We interpret settlement agreements as contracts, applying a de novo standard of review if there are no factual disputes.[4] "We review a grant of injunctive relief for abuse of discretion."[5]

## IV. DISCUSSION

### A. Overview

Dimeff challenges the superior court's May 5, 2010 decision and order, the September 30, 2010 partial final judgment, and the modified order enabling Dimeff to participate in the federal interpleader action. Dimeff conceded at oral argument before us that her dispute over the superior court's cease and desist order was partially mooted by the superior court's modification allowing Dimeff to participate in the interpleader action. Nonetheless, she contends there is still a live controversy over the superior court's authority to issue the original and modified orders in that the orders substantively affect ownership of Cowan's share of the joint venture's EVOS Litigation attorney's fees and may prevent Dimeff and the Oleta Cowan Trust from pursuing non-probate claims against the joint venture and Casey Gerry outside of the interpleader or probate actions.

---

[3]     *In re Estate of Fields*, 219 P.3d 995, 1003 (Alaska 2009) (alteration in original) (quoting *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002)).

[4]     *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011, 1014 (Alaska 2011).

[5]     *Meidinger v. Koniag, Inc.*, 31 P.3d 77, 85 (Alaska 2001).

At its core, this appeal raises three issues. The first issue is whether the superior court has the jurisdiction to interpret and enforce a settlement agreement it had previously approved when doing so may impact the disposition of an asset controlled by a third party and deposited in a federal interpleader action. The second issue is whether the superior court could interpret and enforce the settlement agreement without first holding an evidentiary hearing. The final issue is whether the superior court correctly interpreted and enforced the settlement agreement.

We conclude that the superior court acted within its jurisdiction and provided adequate procedures for Dimeff to contest the issues before it. We also conclude that the superior court did not err in interpreting and enforcing the settlement agreement, that the partial final judgment was not impermissibly vague or ambiguous, and that the modified order did not improperly expand the substance of the original orders. Dimeff will be able to participate in the federal interpleader action, and we leave it to the federal court to determine the res judicata effect of the superior court's substantive interpretation of the settlement agreement. While the superior court's orders bar Dimeff, individually or on behalf of the Oleta Cowan Trust, from asserting a claim outside of the interpleader action for a portion of Cowan's share of the joint venture's EVOS Litigation attorney's fees, we do not read the orders as barring Dimeff from pursuing any individual claims for compensation that she may have against either Casey Gerry or the joint venture, so long as she does not assert direct rights to Cowan's share of the joint venture's EVOS Litigation attorney's fees.

**B.      Jurisdiction To Interpret And Enforce The Settlement Agreement**

Dimeff argues that the superior court lacked personal jurisdiction over the Oleta Cowan Trust, over Dimeff, and over the joint venture. She also contends that the superior court lacked subject matter jurisdiction to interpret the settlement agreement in

a manner that would impact the internal affairs of the out-of-state joint venture and the disposition of an out-of-state asset interpleaded in federal court.

The Cowan Estate responds that Dimeff and the Oleta Cowan Trust, through its predecessor-in-interest, Oleta, voluntarily subjected themselves to the superior court's jurisdiction by appearing in the Cowan Estate probate proceedings and by obtaining the superior court's approval of the settlement agreement. The Cowan Estate does not respond to Dimeff's argument regarding personal jurisdiction over the joint venture. But it argues that even though Cowan's share of the joint venture's EVOS Litigation attorney's fees was held by the joint venture and interpleaded in federal court, the superior court retained jurisdiction to enforce the settlement agreement between the signatory parties.

Dimeff admits that Dimeff and the Oleta Cowan Trust are subject to the superior court's jurisdiction in the probate case, but contends that because both Dimeff and the Oleta Cowan Trust are California residents, the superior court lacks general jurisdiction and can only extend its personal jurisdiction "to the extent of their interest in the administration of the estate and trust." Essentially, Dimeff's position on the merits of the superior court's interpretation of the settlement agreement forms the foundation of her jurisdictional argument — Dimeff points to the settlement agreement provision that "Robert Cowan and/or his firm's right to attorney fees and costs in the [EVOS] litigation shall be distributed as an asset of the Estate of Robert Cowan," and contends that this language cannot be interpreted to refer to Cowan's share of the joint venture's EVOS Litigation attorney's fees. She argues that because the settlement agreement cannot determine the property ownership of the non-signatory joint venture and because she and the Oleta Cowan Trust claim an interest only to those joint venture funds, her claims are unrelated to the probate proceedings and thus outside of her and the Oleta Cowan Trust's limited submission to the superior court's jurisdiction over estate matters.

-15-                                                                                          **6779**

Dimeff applies the same line of reasoning — that the settlement agreement cannot be interpreted to determine the ownership of the interpleaded joint venture funds — to argue that the superior court lacked subject matter jurisdiction over what Dimeff characterizes as non-probate issues.

We disagree with Dimeff's reasoning and conclude that the superior court had both personal jurisdiction over Dimeff and the Oleta Cowan Trust and subject matter jurisdiction to interpret and enforce the settlement agreement. Our decision in *In re Estate of Fields* dispenses with Dimeff's jurisdictional argument.[6] There we explained that Alaska placed subject matter jurisdiction for probate matters not in a probate court of limited jurisdiction, but in the superior court.[7] In fact, we emphasized that "when exercising probate jurisdiction a superior court 'should continue to exercise its jurisdiction' to resolve 'questions ancillary' to the probate proceedings."[8] In *Fields*, a father had transferred out-of-state real estate to his children before his death, leading to a dispute over whether the transfer was unconditional or in trust for the father's descendants.[9] Dimeff misreads *Fields* and asserts that "there was no issue of whether or not the property was part of the probate or trust estate subject to the jurisdiction of the probate court." But the status of the out-of-state property was disputed in *Fields*.[10] The personal representative of the father's estate contended that the father transferred the property *inter vivos* to the children to hold in trust, not unconditionally, and therefore

---

[6]     219 P.3d 995, 1005-06 (Alaska 2009).

[7]     *Id.*

[8]     *Id.* at 1006 (quoting *Briggs v. Estate of Briggs*, 500 P.2d 550, 554 (Alaska 1972)).

[9]     *Id.* at 999.

[10]    *Id.* at 1006.

requested the superior court to impose a constructive trust to bring the property into the estate.[11] Because the dispute over the out-of-state property was "directly related to and intertwined with the administration of [the] estate," we concluded that there was "a sufficient nexus to the decedent's estate for the dispute to fall within the superior court's probate jurisdiction."[12]

The superior court here likewise did not lack jurisdiction to interpret and enforce the settlement agreement. The settlement agreement was signed by Dimeff, Oleta, and the personal representative of the Cowan Estate, and then approved by the superior court in the probate proceedings. The interpretation and enforcement of the settlement agreement is directly related to and intertwined with the administration of the Cowan Estate. Given that conclusion and given that Dimeff and the Oleta Cowan Trust concede that they are subject to the superior court's jurisdiction "to the extent of their interest in the administration of the estate and trust," we conclude that the superior court had personal jurisdiction over Dimeff and the Oleta Cowan Trust for the purpose of interpreting and enforcing the settlement agreement.

If the superior court had no jurisdiction over the joint venture and no jurisdiction over the funds interpleaded in federal court, that still would not divest the superior court of jurisdiction to interpret and enforce the settlement agreement as to the parties properly before it. In *Fields* we explained that even when the superior court lacks authority to affect or transfer title to property beyond its jurisdiction, the superior court "may 'indirectly affect title to property located in another state through its power over

---

[11]     *Id.*

[12]     *Id.*

individuals under the court's jurisdiction.' "[13]  The authority to affect out-of-state property arose from the superior court's personal jurisdiction over the "owners" of the property.[14]  While the superior court here may not have had jurisdiction over the joint venture or authority to directly affect an interpleaded res, it nonetheless had jurisdiction over the parties to the settlement agreement and therefore had jurisdiction to determine the rights between *those* parties.  Thus in exercising its probate jurisdiction, the superior court had the authority to declare that pursuant to the settlement agreement, as between Dimeff, the Oleta Cowan Trust, and the Cowan Estate, the Cowan Estate had the superior claim to Cowan's share of the joint venture's EVOS Litigation attorney's fees.

## C.    Adequate Procedures

Dimeff argues that the superior court failed to follow proper procedures prior to interpreting and enforcing the agreement.  Dimeff contends that the superior court was in no position to interpret the settlement agreement because neither party had filed a complaint or a motion alleging breach of the agreement and because the superior court did not hold an evidentiary hearing.  At oral argument before us Dimeff argued that she had a right to an evidentiary hearing where she could present evidence of the parties' intent and understanding when they executed the settlement agreement.

There is no indication that Dimeff ever requested an evidentiary hearing on the interpretation of the settlement agreement.  Although the Alaska Constitution requires "notice and opportunity for hearing appropriate to the nature of the case," we have explained that "[a] party may waive the right to an evidentiary hearing on disputed

---

[13]    *Id.* at 1015 (quoting *Sylvester v. Sylvester*, 723 P.2d 1253, 1260 (Alaska 1986)).

[14]    *Id.*

material questions of fact by failing to request one before the court rules on the matter."[15] Dimeff argues that she was not put on alert that the motions for a status hearing and for a cease and desist order might lead to a dispositive ruling — while she anticipated that the superior court could give effect to the settlement agreement by repeating its words, she asserts that she had no notice that the superior court would interpret the agreement. We conclude that Dimeff had ample notice of the issue before the superior court.

In its motion for a "status/action hearing" the Cowan Estate requested that the superior court "give full force and effect" to the settlement agreement by barring conduct undermining the enforcement of the agreement. It is true that the Cowan Estate phrased its request as a bar to claims to the "Cowan Estate EVOS asset." But Dimeff could not reasonably have interpreted that to mean only EVOS Litigation attorney's fees to which Cowan might have been entitled outside the joint venture — which she asserts she had no claim to — and not to mean EVOS Litigation attorney's fees received by the joint venture. In the same motion, the Cowan Estate mentioned Cowan's "joint venture entitlement," asserted that the settlement agreement controlled "distribution of any Cowan Estate EVOS *claim*" (emphasis added), and requested that the superior court address Dimeff's claims against the joint venture impacting "Robert Cowan's share." During the status hearing, the Cowan Estate requested that the superior court "enjoin both [Dimeff and the Oleta Cowan Trust] from violating the settlement agreement," and specifically asserted that the Oleta Cowan Trust's argument that it sought a non-probate asset was "contrary to the settlement agreement." Dimeff responded that the joint venture's EVOS Litigation attorney's fees were owned by the joint venture and controlled by partnership law and, therefore, outside the settlement agreement's purview. Given that background, we are not persuaded that Dimeff was unaware that the scope,

---

[15]     *DeNardo v. Maassen*, 200 P.3d 305, 315 (Alaska 2009).

and thus the interpretation, of the settlement agreement was at issue. Dimeff had ample notice that the superior court would substantively interpret the settlement agreement; by failing to request an evidentiary hearing, she waived any right she may have had to that procedure.

Because an evidentiary hearing was not requested in the superior court, we review the issue only for plain error, which exists if "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[16] We conclude that there was no plain error. "We interpret settlement agreements as contracts"[17] and construe them according to the parties' intent, generally a question of fact.[18] If a party has not raised a genuine issue of material fact, an evidentiary hearing is not required.[19] Dimeff has cited no evidence that would have raised a genuine issue of material fact as to the parties' intent. At oral argument before us, she asserted that given the opportunity for an evidentiary hearing, she would have presented testimony of the parties' intent establishing the signatories' understanding of "attorney's fees." Dimeff also asserted that she would demonstrate that the parties and the joint venturers had discussions outside of the settlement agreement context establishing their understanding of "attorney's fees" and "joint venture profits." Before the superior court, however, Dimeff neither mentioned nor attempted to submit evidence of settlement negotiations or ancillary discussions that would have shed light on the parties' intent — she argued for her

---

[16]     *Fields*, 219 P.3d at 1011 (quoting *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981)).

[17]     *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011, 1014 (Alaska 2011).

[18]     *Schmidt v. Lashley*, 627 P.2d 201, 203 n.4 (Alaska 1981) (citing *Adams v. Dion*, 509 P.2d 201, 202 (Ariz. 1973)).

[19]     *Meidinger v. Koniag, Inc.*, 31 P.3d 77, 85 (Alaska 2001).

interpretation based on the settlement agreement's language and on partnership law principles.

At most, Dimeff's presentation to the superior court amounted to the subjective assertion that her interpretation of the settlement agreement aligned with the parties' actual intent. That, however, is insufficient to raise a genuine issue of material fact as to the parties' intent.[20] We have explained that "[d]ifferences of opinion among the parties as to their subjective intent, expressed during the litigation, do not establish an issue of fact regarding the parties' reasonable expectations at the time they entered into the contract, since such self-serving statements are not considered to be probative."[21] Absent evidence raising a genuine issue of material fact, we conclude that the superior court did not commit plain error when it interpreted and enforced the settlement agreement without an evidentiary hearing.

### D. Interpreting The Settlement Agreement And Issuing An Injunction

Dimeff argues the superior court improperly interpreted the 2005 settlement agreement. She maintains that Cowan was never entitled to attorney's fees and costs from the joint venture, only profits; therefore, in referencing attorney's fees and costs, the settlement agreement cannot refer to the joint venture funds interpleaded in federal court. The Cowan Estate responds that Dimeff is attempting to circumvent the settlement agreement by recasting the joint venture's EVOS Litigation attorney's fees as the joint venture's "profits."

---

[20] *See Jarvis v. Ensminger*, 134 P.3d 353, 361 (Alaska 2006) (holding that subjective statement of party's intentions or understandings was "not sufficient to demonstrate a factual dispute over the meaning of the contract").

[21] *Peterson v. Wirum*, 625 P.2d 866, 870 (Alaska 1981).

In the absence of a factual dispute — and as we outlined above, Dimeff raised no genuine issue of material fact — we interpret settlement agreements as contracts, applying a de novo standard of review.[22] "If we agree, on de novo review, that a valid settlement agreement exists, the superior court has no discretion to decline to enforce that agreement."[23] The superior court does, however, have discretion in choosing between methods of enforcement.[24] Dimeff does not dispute that the settlement agreement was valid, thus we turn to whether the superior court correctly interpreted that agreement and then to whether the superior court abused its discretion in its chosen means of enforcement.

The settlement agreement language at issue is: "The parties all agree that Robert Cowan and/or his firm's right to attorney fees and costs in the [EVOS] Litigation shall be distributed as an asset of the Estate of Robert Cowan . . . ." Dimeff suggests this language cannot refer to assets or profits held by the joint venture. Her argument is twofold. First, she argues that the settlement agreement cannot bind non-parties and, therefore, could not be read to control assets held by the non-signatory joint venture. But as we discussed above, Dimeff's jurisdictional reasoning is unpersuasive. Although the settlement agreement cannot bind the joint venture, it can resolve conflicting claims amongst the signatory parties. Second, Dimeff argues that by ordering the EVOS Litigation attorney's fees held in the Qualified Settlement Fund distributed to the joint venture and not directly to the Cowan Estate, the United States District Court ruled that Cowan, and therefore his estate, had no "right to attorney fees and costs." Dimeff

_____

[22]    *Chilkoot Lumber Co.*, 252 P.3d at 1014.

[23]    *Id.* at 1014-15 (footnotes omitted) (citing *Rice v. Denley*, 944 P.2d 497, 499 (Alaska 1997)).

[24]    *Id.* at 1015 n.4.

-22-                                                    6779

essentially argues that the Cowan Estate lost a gamble: While the Cowan Estate may have "believed that its claim for attorneys' fees had value" when it entered the settlement agreement, the United States District Court's ruling invalidated that assumption, and thus, Dimeff argues, "the Estate cannot rewrite the settlement agreement's language now to read 'profits.' "

But the putative distinction between Cowan's share of the joint venture's EVOS Litigation attorney's fees and Cowan's share of joint venture profits arose only after the fees were distributed to the joint venture. In her pre-settlement complaint in California state court, Dimeff described the joint venture as "a joint venture for the purpose of allocating fees received and costs advanced by the Exxon Valdez Attorneys." Dimeff asked the California court for a declaration that "attorneys fees and costs" related to the EVOS Litigation were not a Cowan Estate asset. Further, the joint venture memorandum of understanding did not discuss shares of "profits," but instead discussed attorney's fees. It stated: "After repayment of all overhead and costs, *the fees based on the contingency fee agreements* are to be divided" (emphasis added), and it then specified the division of fees. The agreement the joint venturers entered into after Cowan's death acknowledged "[t]he Venture's only source of income [is] fees based on the contingency fee agreements with its clients in the [EVOS] Litigation," and discussed "the distribution to the Parties of all Client Fees arising from the [EVOS] Litigation."

Dimeff's pre-settlement statements and the joint venture documents demonstrate that Cowan's share of the EVOS Litigation attorney's fees was understood to encompass attorney's fees that were to be received and distributed by the joint venture. The superior court did not err in concluding that the settlement agreement was intended to preclude Dimeff's and the Oleta Cowan Trust's claims to Cowan's share of the joint venture's EVOS Litigation attorney's fees.

We then turn to whether the superior court abused its discretion in enforcing the settlement agreement by enjoining Dimeff from pursuing claims to Cowan's share of the joint venture's EVOS Litigation attorney's fees, either individually or on behalf of the Oleta Cowan Trust. Dimeff concedes that issues regarding the cease and desist order are partially mooted by the superior court allowing Dimeff to participate in the federal interpleader action. Nonetheless Dimeff argues that the superior court's orders may improperly prevent her from pursuing independent compensation claims against Casey Gerry and the joint venture. She also reiterates her jurisdictional argument that the orders improperly prevent her from pursuing claims against the joint venture for a portion of Cowan's share, individually and on behalf of the Oleta Cowan Trust, as those claims are beyond the superior court's jurisdiction. We already have addressed the jurisdictional claims, and we focus our analysis here on the cease and desist order's propriety, not the jurisdictional authority to issue it.

In constructing an injunction the superior court should not "impose on the defendant any greater restriction than is necessary to protect the plaintiff from the injury of which [the plaintiff] complains."[25] The superior court's injunction imposes no undue restrictions on Dimeff. In its order modifying the injunction the superior court allowed Dimeff to litigate her claims in the federal interpleader action, but provided that the "cease and desist order shall otherwise remain in full effect as to any other litigation." The original cease and desist order barred Dimeff from "presenting, filing, or pursuing any claims, suits or requests for arbitration, individually or on behalf of others," that

_____

[25] *Kohl v. Legoullon*, 936 P.2d 514, 519 (Alaska 1997) (quoting HENRY L. MCCLINTOCK, PRINCIPLES OF EQUITY 392 (1948)); *see also DeNardo v. Maassen*, 200 P.3d 305, 316 (Alaska 2009) (holding no abuse of discretion in pre-litigation screening order because it was "appropriately tailored to the particular circumstances of [the] case").

sought a portion of the joint venture's EVOS Litigation attorney's fees apportioned to Cowan or to the Cowan Estate and additionally barred actions that would "impede, prevent or delay payment" of that share. The order allowed Dimeff 30 days to request permission to pursue such claims in another forum, and aside from moving to vacate the order, Dimeff filed no such request. In its partial final judgment the superior court noted that the bar on Dimeff did not preclude personal compensation claims against the Casey Gerry law firm.

We interpret judgments to "render them reasonable, effective, conclusive and in harmony with the facts and law of the case."[26] We therefore do not read the superior court's orders as preventing Dimeff from pursuing any individual claims for compensation that she may have against Casey Gerry or the joint venture, even if those claims may raise costs and thereby reduce the ultimate value of individual shares of joint venturer's EVOS Litigation attorney's fees. The superior court barred Dimeff, individually and on behalf of the Oleta Cowan Trust, from pursuing direct claims to Cowan's share of the joint venture's EVOS Litigation attorney's fees, even when labeled "joint venture profits," aside from the interpleader action. Dimeff has not suggested that there is a forum other than the interpleader action that can affect the disposition of Cowan's share of the joint venture's EVOS Litigation attorney's fees, whatever that share ultimately may be. Because those constraints are in line with the parties' settlement agreement, the superior court did not impose undue restrictions and, therefore, did not abuse its discretion.

Dimeff also argues that the superior court's partial final judgment is "so vague and uncertain that a party cannot reasonably know what it is being ordered to do."

---

[26] *Pennington v. Emp'r's Liab. Assurance Corp.*, 520 P.2d 96, 97 (Alaska 1974) (citing *Simon v. Simon*, 123 So.2d 41, 43 (Fla. Dist. App. 1960)).

She challenges the language requiring her to "immediately cease and desist any further actions in any court other than [the superior court] that would impede, prevent, or delay payment to the Robert Cowan Estate PR of the Cowan share of the EVOS fees and costs." Because she maintains that she and the Oleta Cowan Trust have only sought joint venture "profits," not "fees and costs," she contends the language of the partial final judgment can be interpreted to enjoin her and the Oleta Cowan Trust from "seeking any funds to which they may be entitled," including Dimeff's individual claims for compensation.

The heart of this argument is Dimeff's claim that Cowan's EVOS Litigation attorney's fees are something different from Cowan's share of the joint venture's EVOS Litigation attorney's fees distributed to the joint venture and held as "profits." As we have discussed above, the superior court's partial final judgment, orders, and order to modify made it clear that Dimeff, individually and on behalf of the Oleta Cowan Trust, is barred from pursuing a claim to Cowan's share of the joint venture's EVOS Litigation attorney's fees — even those now characterized by Dimeff as joint venture profits. The partial final judgment and order do not purport to enjoin Dimeff from pursuing her individual claims for compensation, as long as she does not seek payment directly from Cowan's share, nor do the orders prevent Dimeff from litigating any claim she wishes in the federal interpleader action. We decline to hold that the superior court's partial final judgment is so vague or ambiguous that it is unenforceable.

Finally, Dimeff argues that the superior court's modification of the cease and desist order to allow Dimeff to participate in the federal interpleader action and the order denying her request to vacate the superior court's substantive determinations should be reversed on two grounds. She first argues that the new orders suffered the same jurisdictional deficiency as the previous orders in affecting an asset held by a non-

party joint venture and interpleaded in federal court. Our earlier analysis of the jurisdictional issues resolves this argument, thus we turn to Dimeff's second argument.

Dimeff argues that the new orders "improperly substantively enlarged the scope of the earlier Judgment without proper procedures." In support of that argument, Dimeff quotes the partial final judgment barring claims to the "Robert Cowan Estate's share of [joint venture] EVOS attorney's fees and costs," and compares that language to the order to modify — "the Estate is entitled to Robert Cowan's share of [joint venture] attorney fees, including those interpled into the U.S. District Court" — and to the order denying her request to vacate mentioning "interpled funds, which [the superior court] previously determined belonged to the Robert Cowan Estate." She contends that because the partial final judgment and order did not reference the funds interpleaded in federal court, the superior court substantively expanded its ruling without providing adequate procedures.

Dimeff's comparison fails to account for the broad language in the superior court's original cease and desist order. There, the superior court barred claims to EVOS Litigation attorney's fees apportioned to Cowan, "obtained or to be obtained in the future by [the joint venture]." The superior court's new order merely recognized that the joint venture had deposited the EVOS Litigation attorney's fees apportioned to Cowan in the federal interpleader action. Even in the interpleader complaint, Casey Gerry and the joint venture sought the resolution of "various adverse claims to a share of attorneys' fees entrusted to, and held in trust by, Casey Gerry, but ultimately due to the rightful claimant on behalf of the late Robert Cowan." Because the superior court had originally barred claims to Cowan's share of the joint venture's EVOS Litigation attorney's fees, we reject Dimeff's argument that mentioning the interpleader complaint substantively expanded its previous orders.

## V.    CONCLUSION

Because we conclude that the superior court did not exceed its jurisdiction or otherwise err in interpreting and enforcing the settlement agreement between the parties to this appeal, we AFFIRM the superior court's orders and partial final judgment.