25CA0231 Peo in Interest of MELR 07-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0231
Arapahoe County District Court No. 23JV447
Honorable Bonnie H. McLean, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of M.E.L.R., a Child,

and Concerning A.R.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

---

Ron Carl, County Attorney, Kiley Schaumleffel, Assistant County Attorney, Aurora, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect action, A.R. (mother) appeals the judgment terminating her parent-child legal relationship with M.E.L.R. (the child).  We affirm.

## I.    Background

¶ 2    The Arapahoe County Department of Human Services (Department) became involved with the family due to concerns about child neglect and substance abuse.  Based upon these reports, the Department initiated a petition in dependency and neglect for the child.

¶ 3    The juvenile court adjudicated the child dependent and neglected.  The court then adopted a treatment plan for mother.

¶ 4    Later, the Department moved to terminate mother's rights.  Following an evidentiary hearing, the court granted the motion.

## II.    Criteria for Termination of Parental Rights

¶ 5    A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent didn't comply with, or wasn't successfully rehabilitated by, an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.

§ 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.

¶ 6     Whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 7     The credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn therefrom, are all matters within the province of the juvenile court; thus, we won't disturb findings on these issues unless they are so clearly erroneous as to find no support in the record. *People in Interest of S.N-V.*, 300 P.3d 911, 912 (Colo. App. 2011). But determining the proper legal standard to apply in a case and applying that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

III.    Mother's ADA Reasonable Efforts Claim

¶ 8    Mother asserts that the juvenile court erred by finding that the Department provided reasonable efforts to rehabilitate her when it failed to accommodate her mental health and physical disabilities in violation of the provisions of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134.  We discern no reversible error.

A.    Applicable Law

¶ 9    A department of human services must make reasonable efforts to rehabilitate the parent and reunite the parent with the child. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.  The reasonable efforts standard is satisfied if the department provides services in accordance with section 19-3-208.  § 19-1-103(114). Section 19-3-208 requires a department to provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services.  § 19-3-208(2)(b).

¶ 10    In assessing the department's reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d

at 915, by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. The parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in treatment in determining whether the department has made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 11    A department has an affirmative duty under the ADA to make reasonable accommodations for a parent with a qualifying disability when providing rehabilitative services. *People in Interest of S.K.*, 2019 COA 36, ¶¶ 25, 34. Therefore, when determining whether the department made reasonable efforts, the juvenile court must consider whether the department made reasonable accommodations for the parent's disability. *Id.* at ¶ 34; *see also* § 19-3-208(2)(g) (requiring rehabilitative services to comply with the ADA's provisions). However, "[t]he [d]epartment can accommodate, and the juvenile court can address, only disabilities that are known

to them." *S.K.*, ¶ 22. "In other words, before a public entity can be required under the ADA to provide reasonable accommodations, the entity must know that the individual is disabled, either because that disability is obvious or more likely because that individual, or someone else, has informed the entity of the disability." *Id.* For a parent to benefit from a reasonable accommodation they must raise the issue of the ADA's application as early in the proceedings as possible. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 16.

¶ 12    Whether a department satisfied its obligation to make reasonable efforts presents a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

### B.    Mother's Mental Health ADA Claim

¶ 13    The Department and the guardian ad litem (GAL) assert that mother failed to preserve her mental health ADA claim. We agree. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 ("[A]ppellate courts review only issues presented to and ruled on by the lower court.")

¶ 14    We have not found any indication in the record that mother ever provided notice to the Department or the juvenile court that she had a qualifying mental health disability under the ADA. Nor

did she suggest any modifications to her treatment plan to accommodate her alleged mental health disability or challenge the plan's appropriateness during the termination hearing.  *See id.* at ¶ 14.  Notably, neither on appeal nor during the pendency of the case in the juvenile court did mother identify any specific accommodations or modifications related to her alleged mental health disorder that could have been implemented in her treatment plan.

¶ 15     Nevertheless, mother contends that, because she had previously been reported to have bipolar disorder, she suffered from a mental health disability of which the case professionals were aware.  *See S.K.,* ¶ 22 (noting that, if a disability is "obvious," a department may be required to accommodate the disability, even if the parent does not inform the department about the disability).  True, the record reveals various reports that mother had bipolar disorder.  However, the record also shows that mother was provided a referral for a dual diagnosis that would have evaluated her mental health issues, but she never completed it.

¶ 16     Because mother failed to raise this issue during the case, the juvenile court did not have an opportunity to determine whether

mother had a mental health disability, and in the event she had such a disability, to order the Department to provide her with reasonable accommodations. *See S.Z.S.*, ¶¶ 16-17; *see also S.K.*, ¶ 35 ("What constitutes a reasonable accommodation will be based on an individual assessment.").

¶ 17 Given this record, we decline to address mother's unpreserved ADA claim related to her alleged mental health disorder.

### C. Mother's Physical Disability ADA Claim

¶ 18 The Department and the GAL further assert that mother also failed to preserve her ADA claim for a physical disability, because "mother never raised the ADA issue, even by implication." But the record shows that the Department knew mother had "some physical restrictions" that significantly impeded her ability to walk.

¶ 19 Additionally, at a hearing early in the case, while the parties discussed scheduling, mother briefly mentioned that she had a disability. The court, however, made no findings with regard to whether mother had a qualifying physical disability under the ADA, requiring the Department to make reasonable accommodations. *See S.Z.S.*, ¶ 21 ("[W]hether a parent is a qualified individual with a

disability under the ADA requires a fact-specific determination that, if disputed, the court should resolve."); *see also S.K.*, ¶ 22.

¶ 20    On appeal, mother generally argues that the Department failed to provide her the necessary accommodations, but she never asked for specific accommodations during the case and does not describe on appeal any additional accommodations, aside from transportation assistance, that she needed for her purported disability. *See S.K.*, ¶¶ 49-50 (rejecting parents' arguments that their treatment plans failed to include necessary accommodations because they did not identify what accommodations should have been included in the plans). Specifically, mother asserts that the Department should have provided transportation accommodations, such as Uber or other alternatives, to ensure she had access to necessary services. She further argues that her lack of transportation prevented her from making progress on her treatment plan.

¶ 21    We conclude that even if the Department and juvenile court were, or should have been, on notice of mother's physical disability, the court did not err by finding that the Department made reasonable efforts. As relevant to the issue of transportation, the

court found that it did not "believe that [mother] would have been successful on her treatment plan even if she had better transportation." The record supports the court's findings.

¶ 22 The record reveals that transportation alternatives were considered by the Department, but efforts to implement them were largely hindered by mother's lack of engagement in the case. The caseworker testified that she gave mother bus passes and inquired about Department approval for gas cards, Uber, or the disability bus for mother. Indeed, mother's counsel noted in closing that the caseworker "went above and beyond" in her efforts in this case. While the Department ultimately did not give approval for Uber, the caseworker testified the Department would have approved gas cards had they been able to get the necessary information from mother.

¶ 23 Besides transportation, the Department also provided family time and referrals to treatment services. During the thirteen months the case was open, mother attended only three visits despite the offer of virtual family time. Mother never completed a dual diagnosis evaluation, sobriety monitoring, parenting classes, or employment or housing verification as required by her treatment plan. She also did not remain in consistent contact with the

caseworker and missed all but three court hearings, including the termination hearing, despite many of those hearings being virtual. In the caseworker's opinion, which the court found credible, mother was unsuccessful in every component of her treatment plan, and she had not "even had one good week or good . . . month where she has shown any type of stability or any type of consistency."

¶ 24   Therefore, we discern no error in the juvenile court's finding that the Department made reasonable efforts.

## IV.   Inappropriate Treatment Plan

¶ 25   Mother briefly asserts that her treatment plan was inappropriate because it failed to describe any accommodations for her physical disability, in violation of the ADA.  However, because she failed to sufficiently develop this argument on appeal, we decline to address it.  *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to address an appellate argument presented without supporting facts, specific argument, or specific supporting authorities); *see also* C.A.R. 28(a)(7)(B) (argument section of appellant's brief must contain "citations to the authorities and parts of the record on which the appellant relies").

## V.    Disposition

¶ 26    The judgment is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.